# Samuel B. Anderson and others, *vs.* Mary E. Tydings and others.

A debtor may prefer one creditor to another, provided the instrument designed to effect the object contains the requisite provisions.

But if, through a *mistake in law*, the parties select and use such an instrument as cannot effect their object without the aid of a court of equity, the court will not correct the mistake by reforming the instrument, to the prejudice of the general creditors of a debtor in very embarrassed circumstances.

Where creditors, by reason of a *mistake in law*, in drawing a deed, have a legal advantage, a court of equity will not deprive them of it, by rectifying the deed for the benefit of parties whose claim rests upon *no stronger* equity than theirs.

A disclaimer of title to land made by a party *after* judgments have been recovered against him, cannot destroy the *liens* of such judgments upon the legal rights which he had in the land at the time the judgments were recovered.

The act of 1841, ch. 161, prohibits the sale of the husband's tenancy by the curtesy, during the life of the wife, but still leaves in the husband the same life estate which he would have had prior to the passage of that law.

Though an injunction stays an execution, yet the lien of the judgment is not lost or suspended, even during the continuance of the injunction.

A judgment with stay of execution till the happening of a contingency, or until a future specified time, is still a lien upon the estate of the defendant during the stay.

APPEAL from the Equity side of the Circuit Court for Anne Arundel county,

The bill in this case was filed by the appellees, the children and heirs at law of Mary Ann Tydings, for an injunction to restrain execution levied by the appellants, who were judgment creditors of Roger Tydings, the husband of said Mary Ann Tydings, deceased, upon the interest of said Roger Tydings, as tenant by the curtesy, in certain land conveyed to his wife in fee by Thomas R. Beard and wife, by deed dated the 8th of January 1848, and to correct an alleged mistake in said deed. The facts of the case will be found sufficiently stated in the opinion of this court, and in the case of *Anderson et al.*, *vs. Tydings et al.*, 3 *Md. Ch. Dec.*, 167, as well as in the following opinion of the court below, (BREWER, J.,) accompanying the decree appealed from in this case.

"This cause, having been argued on both sides, has been submitted on final hearing and duly considered. The present defendants filed a bill in the chancery court against Roger Tydings and his wife, then living, to set aside a deed from Thomas R. Beard and wife to Mary Ann Tydings, wife of said Roger, on the ground of fraud. The deed was dated January 8th, 1848. The bill was filed March 27th, 1851. Answers were put in, and the wife dying subsequently, the present

complainants were made parties, and, on the 1st of October 1852, the chancellor passed a decree refusing to set aside the deed and refusing to give the complainants, who were judgment creditors, any relief, on the ground, 'that the complainants could reach Roger Tyding's interest as tenant by the curtesy, by an execution at law upon their judgments, if he should be entitled to such interest.'

"The complainants then issued an execution upon their judgments and laid it upon the said tenancy by the curtesy; whereupon the present complainants, heirs of Mrs. Tydings, filed their bill for an injunction, and praying that the land, that is, Tyding's interest, might be conveyed by him to them, on the ground that a mistake had been committed in the deed or instrument of writing conveying the property to Mrs. Tydings in fee, leaving it subject to the curtesy of her husband, when it was intended to secure it to her for the benefit of herself and children beyond the reach of her husband's creditors.

"The special allegations of the bill having reference to this mistake are: 'That your orators' father gave the direction for drawing said deed to your orators' mother *without knowing that any particular form was necessary;* and that said Susan Elliott, (the grandmother of complainants, with whose money the property was bought,) never interfered in any manner, being herself *unacquainted with law, and supposing that every thing had been done to carry out, in a complete manner, the object in view,* which was to protect the said property from the debts of the said Roger Tydings after she had paid a full price for it.'

"In support of these allegations it is proved, by Roger Tydings, that the property was paid for by Mrs. Elliott, his wife's mother, who refused to take the deed to herself, and in reply to her daughter's proposition to do so, stated, that she would prefer *that her daughter should take the conveyance to herself, for her own and her children's benefit;* that he stated to the scrivener who drew the deed, that it was purchased with his wife's means, and that he wished him to draw the deed to his wife, and that not knowing what form to direct concerning the conveyance he gave no particular directions as

to form. This witness further stated in answer to the cross-interrogatories of the defendants, that he was authorised by his wife and Mrs. Elliott to have the deed drawn; that he supposed the deed conveyed to his wife such an estate as he was directed to have conveyed; that he supposed it did convey to his wife a separate and sole interest, and so supposing felt satisfied that he knew what was in the deed, and thought it all right.

" This testimony is confirmed by the testimony of the scriv-ener and of Mrs. Elliott, who proved particularly, that ' she had no intention *to give any interest to Tydings in the land, or subject it to the payment of his debts,* and that if she had apprehended anything of the kind she would have taken the deed to herself.

" I cannot perceive what interest Tydings has in reforming this deed, which would render him an incompetent witness, and even if he had such an interest the case is proved without his testimony. Cases were cited to show that parol testimony cannot be taken to control or vary this deed, but the same cases show that it may be taken to correct a mistake in the draft. The fact then of the mistake, on the ground of which the relief is sought, is, that the vendor and vendee both intended that the property should be conveyed to Mrs. Tydings for the benefit of *herself and children,* so as to exclude any resort of Tydings' creditors to it for the payment of his debts, but being ignorant of what form of conveyance was necessary to effect that object, they gave no *special* direction to the scriv-ener, and he drew the deed in question, which they thought right, and which did, in fact, by the act of 1841, ch. 161, se-cure the property from the claims of his creditors during the life of his wife without her consent, but did not prevent her from disposing of it away from the children, and though it is not altogether clear that it was intended to deprive Mrs. Tydings of any right of disposition or to leave it to her to take care of the children, but left it subject to her husband's tenancy by the curtesy, and liable to that extent to be sold by his cred-itors after her death.

" The question on this case then is, whether this mistake

can now be rectified at the instance of the complainants, at the expense of the creditors of said Roger Tydings, who were such before the execution of the deed. Mrs. Elliott is not the complainant, but the intended *cestui que trusts*, who, by the death of their mother, have all they could have taken as her heirs, and the prayer is to have their father's curtesy conveyed to them and the defendants' creditors enjoined.

"I can find no case precisely like the present. The case of *Hunt vs. Rousmaniere*, 1 *Pet.*, 1, which contains the whole doctrine on the subject, is not exactly similar, but lays down principles upon which I think this case may be decided. The general intention of the parties in that case was to obtain and give a security equivalent to a mortgage, and counsel was consulted on the point, upon whose advice a power of attorney was agreed upon and taken as fully competent to carry their views into effect; but the parties and their counsel made a mistake as to the law, the instrument taken not being competent for that purpose. The court in their opinion say: 'But the plaintiff was not satisfied to leave the kind of security which he was willing to receive undetermined. He thought it safest therefore to designate the instrument, and having deliberately done so it met the views of both parties, and was as completely *incorporated into their agreement* as were the notes of hand for the sum intended to be secured.' And they further say: 'The question is, ought the court to grant the relief which is asked for, on the ground of any mistake arising from any ignorance of the law? We hold the general rule to be, that a mistake of this character is not a ground for reforming a deed founded on such mistake, and refuse to grant the relief sought.' But the court, in the antecedent part of their opinion, had said: 'There are certain principles of equity applicable to this question, which, as general principles, we hold to be incontestible. The first is, that when an instrument is drawn and executed which professes, or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by *mistake of the drafts-man*, either as to fact or law, does not fulfil, or which violates the manifest intention of the parties to the agreement, equity

will correct the mistake so as to produce a conformity of the instrument to the agreement.' And again: 'That the general intention of the parties was to provide a security as effective as a mortgage of the vessel would be, can admit of no doubt, and if such had been their agreement the insufficiency of the instruments to effect that object, which were afterwards prepared would have furnished a ground for the interposition of a court of equity which the representatives of Rousmaniere could not easily have resisted.'

"The facts of this case bring it clearly within the scope of these principles. The parties to the agreement of purchase and sale certainly intended that the land should be conveyed to Mrs. Tydings; that it should not be made liable for the debts' of Roger Tydings, and it might be inferred also, from the testimony, that the intention further was, that it should be secured from any alienation or incumbrance of Mrs. Tydirgs to the prejudice of her children, but the latter intention is immaterial, as she died without any such attempt, and her children now inherit as her heirs. Upon the general intention, as to the exemption from Roger Tydings' debts, the purchaser and the grantee relied. They made no mistake as to the nature of the instrument to be taken; no agreement with regard to it; but in their utter ignorance of what kind of instrument was required, or rather of what provisions in the instrument were necessary to effect that object, merely stating their general intentions somewhat imperfectly, they left it to the scrivener, who, mistaking the law from his slender information in such matters and from the imperfect directions of the agent, drew a common deed of bargain and sale to the wife. The mistake, therefore, was the mistake of the draftsman as to the legal effect of the instrument, or the intentions of the parties; a mistake either in fact or in law, which brings it clearly within the principles laid down in the above case of *Hunt vs. Rousmaniere*, and entitles the parties to the relief prayed against Roger Tydings. I see nothing else in the case to prevent the court from granting the prayer of the bill. The creditors, defendants, were not injured by the omission to disclose the mistake sooner, as they were creditors at the time of the sale

by Tydings and execution of the deed, and therefore did not credit him on the faith of his possible interest in this land, and if they had it would have made no difference, as Mrs. Elliott was a purchaser of the land for valuable consideration. The court will sign a decree for a conveyance of the legal interest of Roger Tydings under the deed to his children, and granting a perpetual injunction against the other defendants."

From the decree passed in conformity with this opinion the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*Henry M. Murray* and *Frank H. Stockett* for the appellants, argued:

1st. That the grantee will be supposed to be conversant with every thing mentioned in the deed, and that if there be any mistake it is one of law and not of fact, which equity will not correct. 2 *H. & G.*, 415, *Hudson vs. Warner & Vance.* 12 *G. & J.*, 49, *Hall vs. Creswell.*

2nd. There is no mistake. The deed is just such an one as the scrivener was directed to frame, as appears by the testimony in the case.

3rd. Parol evidence is not admissible to vary, add to or contradict, a deed or written instrument, except to show fraud. Particularly, equity will not interpose after rights and liabilities have accrued upon the faith of the property. 6 *H. & J.*, 24, *Wesley vs. Thomas. Ibid.*, 435, *Watkins vs. Stockett Roberts on Frauds*, 79, 81.

4th. Parol evidence is not to be admitted or extraneous circumstances introduced in the exposition of deeds, except in the single instance of latent ambiguity. 4 *H. & J.*, 278, *Howard vs. Rogers.* 5 *Do.*, 245, *Hammond vs. Ridgely.* 6 *Do.*, 24, *Wesley vs. Thomas.*

5th. That Roger Tydings having bought and paid for the land, was in possession of the equitable, though not the legal title, which was or is assignable only in writing under the statute of frauds and perjuries.

55    v. 8

6th. Equity will not correct a mistake in law.  1 *Story's Eq.*, secs. 111 to 120.

7th. The equities of the appellants and appellees are at least equal, and where equity is equal the law shall prevail.  1 *Pet.*, 1, *Hunt vs. Rousmaniere.*

*Cornelius McLean* for the appellees, after stating the facts of the case, argued:—1st. That Tydings had no such seizin as will enable the judgment creditors to sell any part of the property; and 2nd, that if he had it was only subject to the use for his wife, which this court will declare, and so modify the deed as perpetually to establish.

1st. It will appear from an examination of Roger Tydings' answer, in the case of Anderson and others against him and others, in chancery, that he disclaimed any interest whatever in the property in question.  If that had been a disclaimer at law, there would have been no seizen in the husband during marriage, and Tydings would, of course, have no right now in the property which could be affected by the executions sought to be enforced against it.  But it is said, that at law a man cannot disclaim except as to that in which he has a perpetuity, and not where his right is merely as husband.  2 *D'Anver's Abr.*, 569.  But a man may disclaim any right or title in equity, and an equitable disclaimer makes him, so far as the legal estate which may be in him is concerned, a mere trustee for the person rightfully entitled.  Now as Tydings disclaimed all interest in this property during the life of his wife, could he have enforced his right as tenant by the curtesy against her heirs at law?  At law he might have done it perhaps, but would he not have been enjoined in equity from enforcing that to which he had said in equity he had no title?  For unless there is a tenant by the curtesy initiate, there can be no tenant by the curtesy after the death of the wife; and to make a tenant by the curtesy initiate, there must be a seizen of the husband in right of the wife, or rather the wife must have a seizen in fact; for a seizen in law will not answer for the curtesy. Now after his disclaimer during the life of his wife, what interest had he?  Suppose he had by deed admitted, that the

conveyance was so worded by mistake; that it never was intended that he should have any interest in it, and that he claimed none. Would not that have been available against every body in favor of the heirs at law, unless it was attacked on the score of fraud? The answer of Tydings is equal to the most formal deed. It was filed under oath in a case in which the defendants, the execution creditors, were plaintiffs, and the whole circumstances of the case, the source from which the money came, the discussion about the person to whom the deed should be made, the testimony of Tydings as to his instructions to the conveyancer, all corroborate Tydings' answer, and show conclusively, that instead of there being any fraud in his disclaimer, and in Mrs. Tydings having an estate for her separate use, it would be a fraud upon the mother-in-law to apply the property intended for her daughter and grandchildren to the payment of the debts of the very man from whom she purchased it for that daughter and those grandchildren. The equity of the wife and of her mother-in-law is established by the proof, so as to fully support the answer of Tydings, and show that when he said he had no interest he really had none. Now if there was nothing fraudulent in that answer, and all the circumstances of the case show that there was no fraud, how can the creditors get over it? They stand in the place of Tydings; and if Tydings had no interest, how can they have any? Tydings has in writing declared he had no interest. That declaration has been sustained by the whole of the *res gestæ*, so as to make it evident to the court that he spoke upon well ascertained facts. There being no fraud, therefore, and he being now a disinterested witness, upon what principle of equitable jurisdiction can we fail to sustain the injunction already obtained in this case?

2nd. I now pass to the second point, under which I contend, that if we are wrong in the first, we can fully sustain our right to the interposition of this court. It is true that courts of equity are generally reluctant to interfere with deeds even on the score of a gross mistake, where the testimony on which their action is intended to be founded, is entirely oral. I relieve this case at once from that difficulty by bringing forward Tydings' an-

swer, in which the party interested admitted the substantial matter now claimed; and also by bringing forward his testi- mony in this case, wherein he has no other interest than a bias in favor of his children: which is of course to be allowed for. He is, nevertheless, the person under whom the defendants claim, and he certainly can himself gain nothing by their suc- cess or failure. His children are the only persons on the one hand, and his creditors are the only persons on the other; so far as he has any *interest*, it is clearly against his children and in favor of his creditors. It is to be recollected, that there was no counsel employed in this case when the transfers were be- ing made; that the deed was drawn by an unskilled person; and that according to the testimony of Mr. Tydings, he was instructed to draw it for the benefit of his wife, Tydings telling him he had no interest whatever in the property. Now what, but a mistake on the part of the conveyancer, could have in- duced him to draw a deed like the one in this case, if Tydings was to have no interest? The deed did give him at once an interest as husband. It gave him a life estate, and it makes no difference that Tydings saw the deed. He was not an expert in law but a plain mechanic. It was in fact no mis- take of law in him, because he supposed that the conveyance had carried out his instructions which he brought from his mother-in-law, who had consulted with his wife. Besides, the consultation between his mother-in-law and his wife, as to who should take the deed, the intention being to provide for the wife, clearly shows what their understanding was of the character of the title to be taken, and that Tydings was to have no interest. It has been said by Lord Hardwicke, "that if a contract is reduced to writing contrary to the intent of the parties, on proper proof it would be modified." 1 *Story's Eq.*, sec. 153. Again, to allow a mistake or omission to avail, would be to work a fraud or surprise on the parties, and as much injustice would be thus done as by a positive fraud. *Ibid., sec.* 155. It is on this account that parol testimony will be allowed to show the mistake, which has always been con- sidered an exception to the rule, that such testimony will not be allowed to vary written agreements. *Ibid., sec.* 156. This

relief, although not granted in doubtful cases, will be granted where there are no strong presumptions to the contrary of the proof; and it will be granted as well where the contract is executed as where it remains executory.   In such cases it reforms the preliminary contract, and the formal and solemn deed founded on it.   *Ibid., sec.* 159.   It had been doubted, and in England the courts have decided not to grant a specific performance where they have reformed the contract, but in this country the contrary has been determined by Chancellor Kent. *Ibid., sec.* 161.   It is a mistake to suppose that the testimony must come up fully to a mistake, for if the court can make out from the nature of the transaction, as disclosed by the testimony, that there *must have been a mistake,* relief will be granted.   *Ibid., sec.* 162.   And this relief will be given in favor of privies against *judgment creditors,* but not against purchasers for a valuable consideration without notice.   *Ibid., sec.* 165.   So equity will grant relief so as to effect the real intentions of the parties, although the instrument may be drawn up in a very inartificial manner, if the real object can be gathered from the instrument or the *circumstances* of the case. *Ibid., sec.* 168.   That the mistake in this case is not a mistake of the law, or at least such a mistake of law as the court cannot relieve from, is evident from the fact, that it has relieved against the effect of marriage upon bonds given before marriage, which were of course made void by the marriage. *Ibid., sec.* 136.   So where parties did not understand the nature and effect of their own acts, which looks something like a mistake in law, the court has relieved.   *Ibid., sec.* 134. See also as to mistake, 1 *Pet.,* 1, *Hunt vs. Rousmaniere.*   I cannot add anything to the argument of Judge Brewer on the case in 1 *Pet.*   The principles there laid down by Judge Washington are clearly applicable to this case, and the peculiarity of that on which the decision was finally made, shows how strongly this case appeals to a court of equity.   Here there was no agreement as to the character of the instrument to be executed.   The only agreement was, that a certain thing should be done; and an agent of the parties undertaking to do the thing, did not do it because he did not know how, or did

not understand the directions or intentions of the parties. In consequence of his ignorance both of the law and of the facts, the very thing was done which they did not wish done, and what they wished was left undone. Now that there was no fraud in any part of this case has been established by the court of chancery, and no appeal was taken from the chancellor's decree. If it was all *bona fide,* why should the plaintiffs have the benefit of this property during the life of Tydings? It was not designed that Tydings should have any interest, and the paper that gave him any was made under a mistake both of the facts and of the law. I do not see how the principles of law laid down in *Hunt vs. Rousmaniere,* 1 *Pet.,* 1, can be got rid of. Now can anything be clearer, than that the parties concerned in the conveyance in this case were entirely mistaken in the whole matter? Can there be a doubt, but that they intended that Mrs. Tydings and her children should have the property in question free from responsibility for the debts of Mr. Tydings, known at the time to be embarrassed, and who was actually selling this very property to pay one, and that not the largest of his debts? I think there can be no question about it; and I feel confident that the case is one loudly calling for equitable interference; and that a court of equity, according to its established principles of action, has power to give the relief now asked for.

ECCLESTON, J., delivered the opinion of this court.

Sometime prior to the year 1848 Roger Tydings, one of the defendants, purchased, and paid for, the property now in controversy, but never received a deed for the same from the vendor, Thomas R. Beard. But on the 8th of January 1848, Beard and wife, by a deed of bargain and sale, for the consideration of $144, as therein stated, conveyed the property to Mary R. Tydings, (the wife of R. Tydings,) her heirs and assigns, in fee-simple. Subsequently the defendants, Anderson and Hall, and Davidson, filed a bill in equity for the purpose of vacating the deed as fraudulent and void. During the pendency of that suit Mary Ann Tydings died. The chancellor did not think the deed void for fraud, and concluded

his opinion in the following language: "The deed, therefore, in my opinion, must be permitted to stand; and as the complainants can reach Roger Tydings' interest as tenant by the curtesy, by an execution at law, (if he is entitled to such interest,) this court should not interfere and grant relief to that extent. The bill, therefore, will be dismissed." After that decision the appellants issued executions upon their judgments against R. Tydings and caused them to be levied upon the disputed property, upon the ground that he had a life estate therein, as tenant by the curtesy. For the purpose of enjoining those executions, and also of reforming the deed to Mrs. Tydings, so as to make it consistent with the real intention of the parties, the present bill was filed. It alleges that R. Tydings was much embarrassed, and owed, amongst other debts, one of about $500 to John F. Nicholson, his brother-in-law, who was pressing him for its payment; that Nicholson owed about the same amount to his mother, Mrs. Elliott, who was also the mother of Mrs. Tydings; that Nicholson was willing to pay his mother by applying his claim against R. Tydings for that purpose, and it was finally agreed that Mrs. Elliott should take, in full payment of her claim against her son, the property purchased by R. Tydings from Beard, which arrangement was to be in satisfaction of the debt due to Nicholson by R. Tydings. The bill also alleges, that Mrs. Elliott agreed, in this mode, to purchase the property for the benefit of her daughter, Mrs. Tydings, and her children, "or for her benefit, so that it should not be in any way subject to the debts" of her husband, and that he should have no interest therein; that it was the design of Mrs. Elliott, Nicholson and R. Tydings, that the latter should have no interest in the property; and when he, (R. Tydings,) gave directions for drawing the deed, he told the conveyancer it was to be for the benefit of his wife, (Mrs. Tydings,) but through the unskillfulness of the conveyancer and the ignorance of the parties, as to the proper plan of conveying the property to Mrs. Tydings, so as to prevent her husband from having any legal interest therein, instead of such a deed as would have carried into effect the intention of the parties, the one prepared was that which ap-

pears to have been executed on the 8th of January 1848, by Thomas R. Beard to Mary Ann Tydings.

Under the sale from Beard to Tydings, the latter, having paid the purchase money and obtained possession, had a full equitable title to the property, the former holding nothing but the dry legal title, which he conveyed to Mrs. Tydings with the consent and authority of her husband. As we understand the allegations in the bill, R. Tydings was induced to unite in the arrangement, which resulted in the conveyance to his wife, in consideration of that arrangement being a payment in full of his debt to Nicholson. The chancellor speaks of this transaction, in the former case, (3 *Md. Ch. Dec.*, 167,) as giving preference of one creditor over others. Under some circumstances a debtor may do that, provided the instrument designed to effect the object contains the requisite provisions. But if in consequence of a *mistake in law*, the parties select and make use of such an instrument as cannot effect their intention without the aid of a court of equity, the court will not correct the mistake, by reforming the instrument, to the prejudice of the general creditors of a debtor in very embarrassed circumstances.

In *Hunt vs. Rousmaniere's Adm'r*, 1 *Peters S. C. Rep.*, 1, the object which the parties had in view is clearly shown. And it is equally evident they supposed the instrument made use of would as effectually accomplish their object as a mortgage could. The intention being clearly established, it was insisted that as the failure to carry it into effect resulted from a mistake, in regard to the proper means of doing so, the complainant might claim the aid of a court of equity to place him in the same condition he would have been if the appropriate instrument had been used. But the court refused the relief asked for, and conclude their opinion by saying: "If all other difficulties were out of the way, the equity of the general creditors to be paid their debts equally with the plaintiff, would, we think, be sufficient to induce the court to leave the parties where the law has placed them."

That was the case of a mistake in law. And here, after stating the arrangement, the bill alleges that the deed was prepared and executed in its present form, "through the un-

skillfulness of the conveyancer and the ignorance of all the parties as to the proper plan of conveying the property to Mary A. Tydings, so as to prevent R. Tydings from having any legal interest therein." This averment, in connection with the evidence given by the witnesses of the complainants, shows, that if any mistake occurred in regard to the present deed, it was a mistake in law. And one which, perhaps, would never have been thought of but for the decease of Mrs. Tydings, leaving her husband the survivor.

Supposing the arrangement now before us was clear of fraud, if the deed had given Mrs. Tydings the property for her sole and separate use, she might have held it free from any right of the defendants claiming under their judgments obtained since the deed. But as that instrument gave her a common fee-simple estate, which at her decease left in her surviving husband a life estate, as tenant by the curtesy, and therefore liable to execution, the question is, whether a court of equity will reform the deed because of the alleged mistake, and exclude the judgment creditors by injunction?

Admitting that, as between the complainants and their father, the deed would be reformed on account of the mistake, it is by no means a necessary consequence that it should be reformed in prejudice of the creditors, whose judgments are based on claims existing prior to the deed.

By agreement the proceedings in the former suit in equity are made evidence in this. There it will be seen the chancellor sustained the validity of the deed against the allegation of fraud, chiefly, if not exclusively, upon the ground that by means of the deed the debt due from Tydings to Nicholson was satisfied, and that the former had a legal right to give the latter a preference over the complainants in that suit, who are defendants, and the judgment creditors in this. In this view of the subject it is evident those defendants stand upon quite as equitable ground as the parties claiming under the deed, or under the arrangement which caused the deed. The object of the parties to that arrangement, no doubt, was, by a legal conveyance, to shut out the claims of the creditors of R. Tydings, and if such a conveyance as could have produced

that effect had been executed, the legal advantage obtained thereby would have been made use of. But inasmuch as, by a mistake in law, and the subsequent death of Mrs. Tydings, the legal advantage is given to the creditors, a court of equity will not deprive them of that advantage for the benefit of those whose claim rests upon no stronger equity than theirs.

In 1 *Peters,* whilst the Supreme Court do not say there are no cases in which a court of equity will relieve against a plain mistake, arising from ignorance of law, they seem very plainly to maintain that, as a general rule, equity will not relieve in such cases.* And speaking in reference to the particular case before them they say: "If the court would not interfere in such a case, generally, much less would it do so in favor of one creditor against the general creditors of an insolvent estate, whose equity is, at least, equal to that of the party seeking to obtain a preference, and who, in point of law, stand upon the same ground with himself." In the case before us the parties do not stand upon equal ground at law, but the creditors have the advantage at law, with equal equity, and seeking no relief from a court of equity, they only ask to be permitted to exercise their legal rights.

In an action of *assumpsit,* (*Henderson vs. Mayhew, et al.,* 2 *Gill,* 409,) the court say: "Parol evidence is inadmissible to change or contradict the terms of a written instrument. Strangers to the instrument, when authorised to impeach or contradict it, may offer parol testimony for that purpose; and so a grantor may in a controversy with the grantee, if he charges the same to have been obtained by fraud or mistake. But the parties to a written instrument are not permitted, in controversies with strangers, to insist that it does not express what it was intended to express. The appellants, after obtaining an absolute deed, and authorising the community to regard them as the owners of the vessel, cannot now, for their own benefit, be permitted to allege that their bill of sale is a mortgage." And the court also say: "The party here, who is a stranger to the deed, insists, that it is what it purports to be, and the appellants who accepted it are precluded from offering the evidence on which they rely, in order to defeat the action against them."

This case shows a willingness to afford the immediate parties to an instrument the privilege of correcting its errors, arising from mistake, when the controversy is between themselves, but much aversion to permitting such corrections when the rights of strangers are involved. But without resorting to this decision at law as an authority in the present case in equity, we think the principles established by the Supreme Court, in the chancery suit of *Hunt vs. Rousmaniere's Adm'r*, are sufficient to show that the complainants are not entitled to the relief they seek against the defendants, who are creditors of R. Tydings.

The counsel for the appellees says, that in the former suit R. Tydings, in his answer, disclaimed any interest in the property in question; and that such disclaimer in a court of equity will exclude the creditors from any right to claim through him the payment of their judgments, or to levy executions upon the property after the decease of Mrs. Tydings. But if, under different circumstances, the disclaimer could have the effect ascribed to it, yet, as the judgments bear date prior to the disclaimer, they were liens upon the legal right, which, by the character of the deed, was vested in R. Tydings, and no subsequent act of his could destroy those liens.

Although it should be admitted that the act of 1841, ch. 161, prohibited the sale of the property under the judgments during the life of the wife, that act still left in the husband the same life estate which he would have had prior to the passage of the law, upon which estate the judgments were liens, subject to stay of execution until the death of the wife. A judgment with a stay of execution, according to express terms, until the happening of a contingency, or until a future specified time, notwithstanding the stay, is a lien upon the real estate of the defendant during the stay. An injunction stops an execution, but the lien of the judgment is not lost or suspended even during the continuance of the injunction. *Murphy vs. Cord*, 12 *G. & J.*, 182.

Entertaining the views expressed in this opinion, we will reverse the decree below, for the purpose of dissolving the injunction, with costs to the creditor defendants, and dismiss

the bill, but without prejudice to the rights of the complainants in reference to any interest or right which R. Tydings may have in the property in contest, or the proceeds thereof, after the judgments are satisfied; and a decree for such purposes will be signed.

*Decree reversed.*