LUCY DAY WAKEFIELD and others *vs.* ZELORA E. BROWN and another.

April 30, 1888.

**Limitation of Time for Issue of Execution—Stay by Injunction.—** The time during which a judgment creditor was, upon the motion of the judgment debtor, enjoined by the court from enforcing his judgment by execution, is to be excluded from the computation of the five years after entry of judgment allowed for enforcing the same by Rev. St. 1851, c, 71, § 80, as amended by Laws 1862, c. 27.

**Deed of Owner of Land by Another Name.—**If the true owner of land is the person who in fact executed and delivered a deed of conveyance, it will be effectual, as between the grantor and grantee, to convey the title, although the grantor executed it under an assumed name, or the scrivener who drew the deed made a mistake in his Christian name.

**Same—Evidence to Identify Grantor.—**Evidence *aliunde* the instrument is admissible to identify the actual grantor.

Ejectment for land in Hennepin county, brought in the district court for that county, and tried before *Hicks, J.,* and a jury, who found for defendants as directed by the court. A new trial was denied and plaintiffs appealed. Both parties claim title under George E. H. Day, plaintiffs under a deed from him to their ancestor, Enos Day, bearing date October 26, 1857, and the defendants under the execution sale mentioned in the opinion.

Plaintiffs also claim title to an undivided half by a deed from John O. Brunius and wife bearing date April 1, 1887.

*Smith & Reed,* for appellants.

*Ueland, Shores & Holt*, for respondents.

MITCHELL, J.	The defendants claim title to the premises in dispute under a sale on execution, issued October 9, 1863, on a judgment rendered and docketed May 13, 1857, against one George E. H. Day. An execution was issued on this judgment May 15, 1857. On July 8, 1857, the judgment debtor obtained from the court an order staying all proceedings under the judgment, and the execution issued thereon, until the further order of the court, and directing the sheriff to return the execution immediately, which he did, stating that he returned it unsatisfied by order of the court. This stay continued in force until October 21, 1858, when the parties stipulated that the answer of the defendant (which it would seem he had been allowed to interpose) should be withdrawn, and the judgment theretofore entered remain and stand as the judgment of the court, and that, in consideration of the premises, execution should be stayed for one year from November 1, 1858. A second execution was issued May 26, 1862, and returned, "No property found," July 28, 1862. A third execution was issued October 9, 1863, which was the one on which the sale was made.

The statute applicable to the case was Rev. St. 1851, *c.* 71, § 80, (Pub. St. 1858, *c.* 61, § 80,) as amended by Laws 1862, *c.* 27, which is that "the party in whose favor judgment is given may, at any time within five years after the entry thereof, proceed to enforce the same as provided by statute; but when no execution shall have been issued and levied, or returned 'No property found,' within five years from the time of the entry of judgment, the lien of the judgment shall be determined, and the property of the judgment debtor discharged therefrom." The contention of the plaintiffs is that the return of the first execution unsatisfied by order of the court was not, within the doctrine of *Sherburne* v. *Rippe*, 35 Minn. 540, (29 N. W. Rep. 322,) sufficient, under this statute, to preserve the lien of the judgment; and, the second execution having been issued more than five years after the entry of the judgment, consequently the lien of the judgment had terminated before the issuing of the execution on which the sale was made. On the other hand, defendants urge that, inasmuch as no formal levy upon real estate is necessary, as has been

repeatedly held by this court, therefore the issuing and placing the first execution in the hands of the sheriff was a sufficient compliance with the statute to preserve the lien of the judgment; that this point was not covered by the assignments of errors, and hence not considered or passed upon by this court, in *Sherburne* v. *Rippe.*

Passing this point, we are clearly of opinion that it must be held that the lien of the judgment was in life at the time of the issuing of the third execution, in October, 1863, upon the ground that the time from July 8, 1857, to October 21, 1858, during which execution was stayed by the court at the instance of the judgment debtor, must be excluded from the computation of the five years allowed by the statute. If so, then, of course, the second execution was issued and returned in time to preserve the lien of the judgment. At common law, the right to sue out an execution in a personal action was limited to a year and a day from the entry of judgment. If the party had slipped his time, he was put to his action upon the judgment. This limitation of the common law was as inflexible and as positive as that of our statute; yet it was well established at common law that when the plaintiff had judgment with stay of execution, or execution was stayed by injunction, the plaintiff might sue out an execution within one year after the stay terminated or the injunction was dissolved. On the same principle, if the defendant brought a writ of error, and thereby hindered the plaintiff from taking his execution within a year, and the plaintiff in error was nonsuited or the judgment affirmed, the defendant in error might proceed to execution after the year, without *scire facias*, because the writ of error was a *supersedeas* to the execution, and the plaintiff must acquiesce until he hears the judgment above. The reason for this is that, the stay of execution being with the consent and for the benefit of the judgment debtor, and the injunction or writ of error being his own act, he should not take advantage of them, nor could he be surprised or prejudiced by the delay, because that delay was in fact referable to himself. It would be unreasonable and inconsistent for the law to present to a party, in one hand, a command to do an act within a certain time under the penalty of losing his rights, and, with the other hand, restrain him from doing the act. For this reason, the

time during which the plaintiff was thus prevented by the law from issuing execution was at common law excluded from the year allowed for that purpose.    3 Bac. Abr. "Execution," H, 724; *Hutsonpiller* v. *Stover*, 12 Grat. 579; *Michell* v. *Cue*, 2 Burrow, 660; *U. S.* v. *Hanford*, 19 John. 173; *Noland* v. *Seekright*, 6 Munf. 185.    Analogous in principle are those cases in which the courts have frequently made exceptions to the operation of statutes of limitation, though exceptions for such causes were not provided for in the statutes; as, for example, the period during which an administrator or executor is exempted from suit; when the right to sue an administrator has been suspended by reason of an appeal from the order appointing him; the time during which the courts have been shut by war; or the period during which the plaintiff has, by the defendant, been prevented by injunction from bringing suit.    The limitation of the statute, of the right to issue execution to five years, is strictly analogous to the common-law limitation of a year and a day.    The only change is one of time.    In enacting such a statute, it is not be presumed, notwithstanding its general terms, that the legislature intended to ignore or change the common-law rules for the computation of time under the limitation.    On the contrary, in the absence of express provisions to the contrary, it is to be presumed that they enacted the statute with reference to these rules, and that they intended them to continue to apply.

We are strongly inclined to the opinion that, under the stipulation of the parties of October 21, 1858, the case stood precisely as if the plaintiff in the action had obtained judgment with a stay of execution, and hence that the period of the stay under the stipulation, as well as the stay under the order of the court, should be excluded.    If so, the execution under which the sale was made was issued in time, without regard to the two previous ones.    But, however this may be, we are clear that the time the stay under the order of the court continued in force should be excluded.    It follows that the execution sale was valid, and transferred to the purchaser all the interest in the premises which Day had in them.

That he owned one undivided half is undisputed.    Whether he owned the other half depends upon the existence and validity of a

conveyance thereof to him by one John O. Brunius, the previous owner. There was introduced in evidence the record of a deed thereof to Day, executed April 4, 1857, in the body of which the grantors are described as James O. Brunius and Bertha, his wife. The signatures to this deed are, "J. O. Brunius" and "Bertha Brunius," and in his certificate of acknowledgment the officer certifies that James O. Brunius and Bertha, his wife, personally came before him, and acknowledged the execution of the instrument. Parol evidence was offered and admitted to prove that John O. Brunius and wife were the parties who in fact executed this deed. It is unnecessary to repeat this evidence, or to refer to it further than to say that, if competent, it, in our opinion, conclusively proves that John O. Brunius was the identical person who executed this deed. Either he executed it under the assumed name of James O. Brunius, or, which is more probable, the scrivener who drew the deed made a mistake in the Christian name of the grantor, who signed himself "J. O. Brunius," a name by which he was also often known. It is immaterial which of these hypotheses is the correct one; for, in either case, there can be no question, either upon reason or authority, that, if he in fact executed and delivered this instrument as his deed, it was effectual, as between the grantor and grantee, to convey the title. If the true owner conveys by any name, the conveyance, as between the grantor and grantee, will transfer title, and in all cases evidence *aliunde* the instrument is admissible to identify the actual grantor. The admission of such evidence does not change the written instrument, or add new terms to it, but merely fixes and applies terms already contained in it. 3 Washb. Real Prop. 281, (marg. p. 566;) *Hommel* v. *Devinney,* 39 Mich. 522; *Nixon* v. *Cobleigh,* 52 Ill. 387; *Lyon* v. *Kain,* 36 Ill. 362, 369; *Middleton* v. *Findla,* 25 Cal. 76, 81; *Fallen* v. *Kehoe,* 38 Cal. 44; *Staak* v. *Sigelkow,* 12 Wis. 234; *Morse* v. *Carpenter,* 19 Vt. 613; *Fletcher* v. *Mansur,* 5 Ind. 267; *Janes* v. *Whitbread,* 11 C. B. 406, 411; *Elliot* v. *Davis,* 2 Bos. & P. 338. In the present case there is no question of innocent purchasers. It stands precisely as if the controversy was between the original parties to the deed.

Judgment affirmed.