[No. 13839. Department One. April 13, 1917.]

LOUIS HENSEN, *Appellant*, v. W. H. PETER, *Respondent*.[1]

LIMITATION OF ACTIONS—SUSPENSION—INJUNCTION — EXECUTION— SALES. Since an injunction, while in force, suspends the statute of limitations, where an execution sale would have been made within the six-year period limited by law but for the issuance of an injunction, the time lost by reason of the injunction must be excluded from the computation of the time within which the judgment could have been enforced.

SAME—INTERRUPTED SALE—RETURN. Where, after levy of a writ of execution, the sale was enjoined, and later the injunction was dissolved, the officer may proceed to sell the property, after the return day and after the actual return.

Appeal from an order of the superior court for King county, Jurey, J., entered September 27, 1916, denying confirmation of an execution sale, upon sustaining objections thereto. Reversed.

*McBurney & O'Connor*, for appellant.

*Cochran & Plummer* and *Van Dyke & Thomas*, for respondent.

WEBSTER, J.—This is an appeal from an order denying a motion to confirm an execution sale of real property. The pertinent facts are these: On the 30th day of July, 1908, appellant, Louis Hensen, obtained a judgment against re-

[1] Reported in 164 Pac. 512.

spondent, W. H. Peter, in the superior court of King county, in the sum of $560. On the 20th day of November, 1913, appellant caused an execution to be issued upon the judgment, directed to the sheriff of Clallam county. On the 21st day of November, 1913, the execution was levied upon certain real property in Clallam county belonging to respondent. Thereafter the property was duly advertised to be sold on January 10, 1914. On the 9th day of January, 1914, a temporary injunction was sued out of the superior court of Clallam county by respondent, restraining the sheriff and appellant from proceeding to sell the property under the execution. Upon trial, the injunction was dissolved and the action dismissed; whereupon respondent appealed to this court and superseded the judgment. The appeal was thereafter heard and the judgment of the lower court affirmed. *Peter v. Hensen*, 86 Wash. 413, 150 Pac. 611.

On the 4th day of January, 1916, the remittitur in the cause was filed in the office of the clerk of the superior court of Clallam county. On the 11th day of March, 1916, the property formerly levied upon was sold by the sheriff and return of sale was duly made to the superior court of King county. Appellant thereafter moved for a confirmation of the sale, to which respondent objected upon the ground that, at the time the property was sold, more than six years had elapsed since the rendition of the judgment upon which the execution was based and that, by virtue of the provisions of Rem. Code, § 459, the lien of the judgment had expired and the sale was consequently void. This objection was sustained, and appellant's motion for confirmation denied, from which order this appeal is prosecuted.

Respondent urges that, notwithstanding the injunction, upon the expiration of the statutory period of six years, the judgment ceased to be a lien upon his property, and that the sale under the execution was a nullity. Appellant contends that, inasmuch as the sale would have been made well within

the six-year period but for the injunction which was subsequently dissolved, respondent cannot be heard to say that the lien has been discharged by the running of the statute.

The effect of an injunction, which is subsequently dissolved, on the lien upon real estate of a judgment which expires by limitation during the time the injunction is kept in force, is an important question of first impression in this jurisdiction and one upon which the courts are not in entire accord. Therefore we have carefully examined the authorities in an effort to ascertain and adopt the correct rule.

Freeman, in his work on Judgments (4th ed.) vol. 2, § 394, after discussing the question at some length, concludes that the better view is that the issuing of an injunction which is subsequently dissolved does not destroy the judgment lien; that if the judgment debtor procures an injunction and thereby prevents the enforcement of the judgment within the time limited by law and the injunction is thereafter dissolved, he is, upon equitable grounds, not permitted to take advantage of his own wrong by urging that the lien has been lost by the delay caused by his writ.

In 1 Black on Judgments (2d ed.), § 395, the same view is expressed in the following language:

"Where the execution of a judgment is restrained by injunction, until the lien is lost by limitation, the party proceeding by injunction, upon its dissolution, cannot take advantage of such loss of the lien."

In 1 Joyce on Injunctions, § 670, the following rule is announced:

"Equity will regard a judgment debtor, applying for an injunction to restrain the execution of the judgment, as consenting that if the injunction be improvidently granted, he will put his adversary in the same condition he was at the time it was granted, and, therefore, if while an execution has been unjustly restrained the judgment has been barred at law by the statute of limitations, equity will furnish a remedy by enjoining the judgment defendant from pleading such statute."

High, in his treatise on Injunctions (4th ed.), vol. 2, § 1536, announces this rule:

"The effect of a decree dissolving an injunction against the enforcement of an execution at law is to restore the execution creditor to the same position which he occupied before the granting of the writ, and he may proceed to enforce his execution as if no injunction had been granted."

In the course of the opinion in *Pulteney v. Warren*, 6 Vesey Jr's Rep. 73, Lord Eldon said, at page 91:

"I consider these persons as plaintiffs, asking an injunction, and impliedly saying, they ask it upon the terms of putting this plaintiff [the defendant in the injunction proceedings] in exactly the same situation, as if it had been determined, they were not entitled: for otherwise there is no color of justice calling upon the court to discuss the question, whether they are entitled to equitable relief."

In *Work v. Harper*, 31 Miss. 107, 66 Am. Dec. 549, a case where a judgment creditor was prevented from enforcing his execution until after the expiration of the time prescribed by statute, in consequence of an injunction granted on application of a mortgagee of the property. the lien of whose mortgage was, at the time of the issuance of the injunction, secondary to that of the judgment, and the injunction was subsequently dissolved upon the failure of the mortgagee to establish his right to the writ, it was held that he could not take advantage of the fact that the lien of the judgment was lost.   Mr. Justice Handy, speaking for the court, said:

"Upon the first point, it appears that the judgment of the appellee was rendered on the twenty-first of October, 1846, and on the sixteenth of January, 1847, the appellant's bill was filed, by which the appellee was enjoined from proceeding to execution upon his judgment, until such time as the lien of the judgment was barred by the statute of limitations. The appellant now seeks to avail himself of the expiration of the lien in order to protect his title under the mortgage. And the question is whether he is entitled to do so, under the sanction of a court of equity.

"It is not, and cannot properly be, denied that the judgment was a valid lien upon the property at the time the execution was levied, and that it was superior to the claim of the appellant under the mortgage. That this just legal right has been prevented from being enforced until it is impaired or lost, and that, by the litigation which has been commenced and carried on by the appellant. And when he has failed to establish the claim to protection upon which the litigation was commenced, and it appears that he has improperly prevented the judgment creditor from enforcing his execution, he cannot be permitted to take advantage of the accidental circumstance occasioned by himself, that the lien of the judgment is lost. The loss of the lien has been occasioned by himself, against the will of the appellee, and without any fault on his part; and upon no principle of equity could he be held to lose his right, to the benefit of the appellant."

In *Sugg v. Thrasher*, 30 Miss. 135, the same court, in discussing the question, uses this language:

"The general rule, as argued by counsel, that the Statute of Limitations, in all cases where it is applicable, is regarded as a meritorious defense, may, to the fullest extent, be admitted. The same may be said, in respect to the argument that it is a defense which may avail a party as well in equity as at law; and it may further be admitted, that a court of equity will not lend its aid to deprive a party of the advantage of this defense, if fairly obtained. It may also be conceded, that if the advantage of this defense has arisen from the *laches* of the creditor, and not from the conduct of the debtors, that it is their privilege to make it, and it is not within the province of the court to question its propriety, on the score of morality.

"But while these principles must be admitted as general rules, there are others of equal, if not of greater potency, which must not be overlooked under the peculiar circumstances of this case.

"It is a familiar principle of equity, that a man shall not be allowed to avail himself of an unconscientious advantage acquired over his adversary. The inquiry in this case naturally forces itself upon the mind, why was it that the plaintiff at law delayed this long period to enforce his judgment?

"The response is, that the debtors, by the means which they employed, forced him to delay. It was not an act of choice on his part, but one of legal compulsion. He but obeyed the process of the court, issued and kept in operation by the debtors, in the fruitless litigation which they carried on for this long period of time. That which is forced upon a party, cannot be said to be his voluntary act. He ceased to prosecute his remedy on his judgment, because such was the command of the process, which issued in pursuance of the prayer of the debtors. . . .

"But it is not necessary to dwell on this point. It is sufficient to know that the plaintiff only obeyed the process in refraining from enforcing his judgment; and it certainly comes with a bad grace from parties who availed themselves of all the means known to the law, to continue this process in full operation, now to complain of the plaintiff's obedience to that which he dared not, under what ought to have been heavy penalties, to disobey. The question then simply resolves itself into this. If the plaintiff voluntarily omitted to prosecute his remedy until the bar of the statute attached, it is his misfortune, and the debtor is at liberty to set up the defense, as in any other case. If, on the contrary, the plaintiff's failure in this respect, must be attributed to the obedience which he was bound to pay to the injunction, the failure must be regarded as the legitimate result of the act of the debtors, and they cannot in conscience interpose the statute as a defense. Not a doubt can exist that it was alone the injunction, which caused the delay in issuing execution on the judgment; and such being the fact, the case falls completely within the rule of equity already stated."

Later in the opinion, in answer to the argument that courts should not by construction engraft upon statutes exceptions that have not been clearly expressed by the legislature, it is said:

"This rule is admitted to the fullest extent. The question is not one of either legislative or judicial exception, arising by construction of the statute, but whether, under the facts of the case, it is a defense of which the defendants can conscientiously avail themselves. It is admitted to be a defense at law, but such a defense as a court of equity acting upon the consciences of the parties will not permit them to

make. Not that the defense of the statute of limitations is of itself unconscientious or immoral, but that it is rendered so by the facts and peculiar circumstances of the case.

"The right asserted was as clear as it was when the plaintiffs first encountered the injunction, and the object is, to leave the parties, with respect to their rights, where they stood when the debtors commenced their litigation in the Superior Court of Chancery. No principle upon which the statute of limitations rests is violated by this course. Admit that it is what counsel say it is, a statute of repose, every principle of justice and sound policy forbids that parties should by improper means, or by abusing the process of the law intended for salutary purposes, bring themselves within its operation, and enjoy the advantage thus unrighteously acquired. To sustain such a principle, would be but holding out inducement to litigants to commence and protract, by artifice or other unauthorized means, vexatious litigation, with a view of finding immunity ultimately under the statute. When parties have fairly acquired this defense by regular course of things, they are entitled to the benefit of it, if they choose to make it, but they ought never to be encouraged to start prematurely in search of it, by protracting either unfounded or useless litigation."

In *Overton v. Perkins*, 8 Tenn. 366, the supreme court of that state held that the lien of a judgment upon which execution has issued and been fixed by levy on the lands of the debtor will not be defeated by the debtor's obtaining an injunction which is afterwards dissolved; that the injunction suspends but does not destroy the lien. In the course of the opinion the court said:

"When property is once levied upon, either real or personal, the creditor has a right to have his judgment satisfied by the sale of the same, unless he be guilty of some default, by which he loses his lien. 1 Salk. 322; 1 Burr. 34; 3 Munf. Rep. 441. This is a general rule, and to which no exception is found in the present case, as we will endeavor to show. What is an injunction? A writ issued upon the *ex parte* statement of the defendant at law, made to a court of equity, which admits the validity of the legal rights of the plaintiff at law, but relies upon a statement of facts which could not

be there heard; and upon this the injunction is, in the first instance, granted. If the facts are proved true, the injunction is made perpetual on a final hearing.

"But suppose they turn out false and fraudulent, merely intended to hinder and delay the creditor in the collection of his just debt? The creditor resists the pretended equity at great trouble and expense; and after years of litigation (fifteen years in this instance) he procures the bill to be dismissed. Is he then to be told his lien upon the property levied upon before the injunction restrained its sale is gone? the debtor has sold it in the mean time, and is now insolvent. Has the creditor been in any default? None. He has used all possible vigilance to collect his debt, for the last fifteen years; is now contending with the second injunction; throughout has been vigilant, and only hindered and delayed in the collection of his debt by the acts of the debtor. Will not, then, the acts of the debtor do an injury to the creditor, in the enforcing of his judgment, if it is declared that the injunction destroyed the lien? If this would be the consequence of such a decision, it will be illegal to make it."

In *Wakefield v. Brown*, 38 Minn. 361, 37 N. W. 788, 8 Am. St. 671, it was held that the time during which a judgment creditor was, upon motion of the judgment debtor, enjoined by the court from enforcing his judgment is to be excluded from the computation of the time within which the creditor is allowed to enforce his judgment. In that case the court said:

"We are clearly of opinion that it must be held that the lien of the judgment was in life at the time of the issuing of the third execution, in October, 1863, upon the ground that the time from July 8, 1857, to October 21, 1858, during which execution was stayed by the court at the instance of the judgment debtor, must be excluded from the computation of the five years allowed by the statute. If so, then, of course, the second execution was issued and returned in time to preserve the lien of the judgment. At common law, the right to sue out an execution in a personal action was limited to a year and a day from the entry of judgment. If the party had slipped his time, he was put to his action upon the judgment. This limitation of the common law was as in-

flexible and as positive as that of our statute; yet it was well established at common law that when the plaintiff had judgment with stay of execution, or execution was stayed by injunction, the plaintiff might sue out an execution within one year after the stay terminated or the injunction was dissolved. On the same principle, if the defendant brought a writ of error, and thereby hindered the plaintiff from taking his execution within a year, and the plaintiff in error was non-suited or the judgment affirmed, the defendant in error might proceed to execution after the year, without *scire facias*, because the writ of error was a *supersedeas* to the execution, and the plaintiff must acquiesce until he hears the judgment above. The reason for this is that, the stay of execution being with the consent and for the benefit of the judgment debtor, and the injunction or writ of error being his own act, he should not take advantage of them, nor could he be surprised or prejudiced by the delay, because that delay was in fact referable to himself. It would be unreasonable and inconsistent for the law to present to a party, in one hand, a command to do an act within a certain time under the penalty of losing his rights, and, with the other hand, restrain him from doing the act. For this reason, the time during which the plaintiff was thus prevented by the law from issuing execution was at common law excluded from the year allowed for that purpose."

See, also, *Knox v. Randall*, 24 Minn. 479.

In 1911 the supreme court of Michigan, considering the precise question presented by the case now before us, declared that it was one of first instance in that state and, after examining numerous authorities, concluded that, on both reason and authority, the injunction operates as an interruption of the running of the statute of limitations and will so operate as long as it is maintained in force. *Steele v. Bliss*, 166 Mich. 593, 132 N. W. 345, Ann. Cas. 1912D 1020, 37 L. R. A. (N. S.) 859.

As bearing upon the question, see, also, *United States v. Wiley*, 78 U. S. 508, 513; *Braun v. Sauerwein*, 77 U. S. 218, 223; *Amy v. Watertown*, 130 U. S. 320; *Anderson v. Tydings*, 8 Md. 427, 63 Am. Dec. 708; *Wilkinson v. Flowers*, 37

Miss. 579, 75 Am. Dec. 78; 1 High, Injunctions, § 87; 19
Am. & Eng. Ency. Law (2d ed.), 215; 10 R. C. L. 1269.

We cannot without unduly extending this opinion under-
take to discuss in detail the cases holding to the contrary
doctrine. Suffice it to say that every argument advanced in
those cases is considered in the authorities already cited. We
are convinced that the rule announced in the decisions and
texts to which we have referred is sustained by the over-
whelming weight of authority, both numerically and upon
principle, and is founded in natural and moral justice.

This view is not open to the criticism of being judicial leg-
islation in that it amounts to reading exceptions into a stat-
ute that the legislature has not seen fit to make. Nor does it
rest upon the thought that the statute of limitations is in-
herently an unconscionable defense. Nor does it carry the im-
plication that a litigant is to be penalized beyond the burdens
ordinarily imposed by law for failing to maintain his posi-
tion in a lawsuit. It merely declares that one shall not, by
waging unfounded litigation, be rewarded at the expense of
his unwilling opponent. It is based upon the equitable prin-
ciple that a party will not be permitted to avail himself of an
unconscientious advantage obtained by his own wrongful act
and without fault on the part of his adversary. It is sus-
tained by the wholesome consideration that a party should
not be permitted to profit by the abuse or misuse of legal
process or by imposing upon judicial tribunals litigation
without merit. It is also fortified by that sound public policy
which sets its face against putting a premium upon un-
righteous and vexatious litigation commenced and prosecuted
by a party for the ulterior purpose of obtaining by indirec-
tion an advantage which in equity and good conscience he is
not entitled to enjoy. In a number of states it is provided by
statute, in varying forms of words, that the time during which
the execution of a judgment or decree is enjoined or stayed
shall not be computed as any part of the period of limita-

tion; but the cases to which we have referred are not based upon such statutes.

It will not be necessary in this case to go into the question of whether, by suspending the right to proceed under the execution, the lien of the judgment was continued in force during such suspension and in addition for a period corresponding to the unexpired portion of the six years at the time the injunction was served, or that the judgment debtor must proceed within a reasonable time after the dissolution of the injunction. Appellant at the time he was enjoined by respondent had more than eight months in which to enforce his judgment. The property was sold under the execution sixty-seven days after the filing of the remittitur in the superior court. Under either view this was timely.

Upon the day following the service of the temporary injunction, the sheriff of Clallam county made his return of the execution to the superior court of King county, attaching thereto a copy of the order of injunction. It is now urged that the sale was void for the reason that it was made after the return of the writ. This contention is without merit. It is well settled that, in the absence of a statute to the contrary, an officer who has entered upon the service of an execution by levying the same upon the property of the debtor before the return day may, after the return day and after the actual return, continue to hold the property and prosecute such further proceedings as may be necessary to convert the property, whether real or personal, into money for the purpose of satisfying the judgment. This is especially so where the sheriff has been interrupted by an injunction issued at the instance of the judgment debtor. 1 Freeman, Executions (2d ed.), §§ 58 and 106; 1 Joyce, Injunctions, § 669; *Knox v. Randall, supra; Corbin v. Pearce*, 81 Ill. 461; *Johnson v. Bemis*, 7 Neb. 224; *Moomey v. Maas*, 22 Iowa 380, 92 Am. Dec. 395; *Savings Institution of Harrodsburg v. Chinn's Adm'r*, 70 Ky. 539; *Van Gelder v. Van Gelder*, 26 Hun 356; *Rose v. Ingram*, 98 Ind. 276; *Spang v. Commonwealth*, 12

Pa. St. 358; *Pettingill v. Moss*, 3 Minn. 222, 74 Am. Dec. 747; *Wheaton v. Sexton's Lessee*, 4 Wheat. (U. S.) 501; *Clerk v. Withers*, 92 Eng. Rep. (Full Reprint) 211.

The order appealed from will be reversed with direction to confirm the sale.

ELLIS, C. J., CHADWICK, and MAIN, JJ., concur.