Moomey et al. v. Maas et al.

1. Mortgage: EFFECT OF FORECLOSURE AND SALE: DOWER. The foreclosure of a mortgage in which the wife did not join, and sale thereunder, does not bar her right of dower in the mortgaged premises, although she is made a party defendant in the foreclosure proceeding, but in which her right of dower is not put in issue.

2. —— ALITER, if the wife had joined in the mortgage, or her right to dower had been put in issue by allegations in the petition.

3. Jurisdiction: DEFECTIVE RETURN. A purely technical defect in the return of service of notice in a foreclosure proceeding, upon the minor heirs of the deceased mortgagor, which might, on appeal, have been held defective, cannot, in a collateral proceeding, instituted by such heirs to redeem the mortgaged premises, avail to invalidate the foreclosure decree and sale thereunder; especially when several years have elapsed since the sale, and there are no supporting equities in the case.

4. Judicial sale: AFTER DEATH OF EXECUTION. Where an execution is levied before its expiration, upon real estate, the sale may be made after the return day. Stein v. Chambles, 18 Iowa, 474; Childs v. McChesney, 20 Id., 431.

*Appeal from Iowa District Court*

TUESDAY, JUNE 18.

FORECLOSURE: PARTIES: WHO BOUND BY DECREE: SHERIFF'S SALE AFTER RETURN DAY, ETC.—This cause involves the valadity and effect of a certain prior foreclosure proceeding and sheriff's sale thereunder.

The plaintiff, Maria Moomey, is the widow of her former husband, Daniel Talbott. Her co-plaintiff, Pundt, claims by deed under her. The other plaintiffs are the heirs at law of the said Daniel Talbott, deceased. The defendant, Roberts, was a mortgagee of the said Daniel, and the purchaser at the foreclosure sale herein below referred to; his co-defendant, Maas, is a subsequent purchaser of the land from him. The further facts are these:

In 1857, the said Daniel Talbott executed to the said Roberts a mortgage on the land in controversy.

In 1858, the said Daniel died, leaving him surviving, the said Maria, his widow (who has since intermarried with Moomey) and six children, then all minors. One of the children has since deceased, intestate, leaving his mother his sole heir at law. One Hunter was appointed administrator of the estate of said Daniel.

In 1859, Roberts commenced a suit to foreclose his mortgage, making defendants thereto, Hunter, the administrator, Maria, the widow, and all of the minor children of the mortgagor. The original notice is in due form, and was personally served upon all of the defendants.

The return of service on said notice is as follows:

"I received the above and foregoing notice on the 25th day of July, 1859, and I served the same on the same day, by reading the above and foregoing notice to the foregoing named defendants, John A. Hunter, Hessey Talbott, David Talbott, Daniel Talbott, Eliza Talbott, James Talbott, Paul Talbott and Maria Talbott, and in their presence and hearing. No copy of petition or notice demanded."

This return was duly signed and verified.

At this time two of said minors (Hessey and David) were over fourteen years of age, and the other four under that age; and all of them lived with their mother, the said Maria. They had at this time no legal guardian. At the August Term, 1859, the court appointed a guardian

*ad litem* for the said minors, who duly answered, and a decree by default was entered for the amount due on the mortgage, and a sale ordered. On the 27th day of January, 1860, a special execution issued in due form, and was *immediately* levied upon the mortgaged estate, and the premises advertised for sale on the 1st day of March, 1860. The sheriff's return on the execution adds: "but there being an agreement between the plaintiff's attorneys and defendant, by which the sale was indefinitely postponed, the said defendant paying the costs then due, and the sum of $119.16, which was credited on the principal, I then adjourned the sale, and on the 19th day of June, 1860, I offered the said property as before, after having given four weeks' notice," etc. The return then recites, that the land was purchased by Roberts, who received the sheriff's deed. The other facts relating to the adjournment and sale, will be found stated in the opinion.

In 1864, Roberts sold the land to the defendant, Maas, for $500, the property having been all the time in the possession of the said Maria. In 1865, the plaintiffs, the said Maria, widow, Pundt, her assignee, and the heirs at law of the mortgagor, commenced the present suit in equity to set aside said foreclosure decree and sheriff's sale thereunder. Defendants answered, denying the right of the plaintiffs to the relief sought. On the hearing, the District Court entered a decree in favor of the plaintiffs, setting aside the sheriff's sale and allowing them to redeem the mortgage, plaintiffs having previously tendered the amount. The District Court gave for this decree the following reasons: "The court, in the foreclosure, had no jurisdiction to render a decree of foreclosure against the minor heirs of Daniel Talbott, deceased, the notice not being served upon them as required by law. Rev., § 2838. *Allen* v. *Saylor*, 14 Iowa, 437. As to the widow, she did

not sign the mortgage, and her rights could not be affected by the foreclosure. Therefore, ordered, that a decree be entered as prayed for by plaintiffs, upon payment of balance due on the mortgage to Roberts, with interest, but without costs of the foreclosure suit, and upon payment of taxes paid by defendants." A decree was entered accordingly, from which the defendants appeal.

*Martin & Kagy* for the plaintiffs (appellees).

*Templin & Feenan* and *J. D. Templin & Son* for defendants (appellants).

DILLON, J.—I. The plaintiff, Maria, the widow of the mortgagor, did not join in the execution of the mortgage, hence she has a right of dower in the land in question unless this right is barred or extinguished by the foreclosure suit to which she was made a party defendant, and the sheriff's sale thereunder. Defendants claim that the foreclosure decree and sale had the effect to cut off or bar her right of dower. This is denied by the plaintiffs.

1. MORTGAGE: effect of foreclosure and sale: dower.

In this respect the District Court decided correctly. We have examined the foreclosure petition, and find that it contains no allegations with respect to the dower right of the widow, and that it does not in any way seek to bar or foreclose it. It simply prays "that an account be taken of the amount due on the mortgage; that a decree be rendered therefor against the administrator; that the equity of redemption of *said heirs at law* of said decedent in and to the said mortgaged premises be foreclosed; that the same be sold, and for general relief." Her dower had not been assigned to her. Under these circumstances, it is plain that she was not bound to appear and set up her dower right, in order to protect it—to prevent it from being cut off by the foreclosure decree. The decree made

no reference to her dower right, and did not undertake to bar it.

Before the foreclosure proceeding was commenced, her dower right had become consummated by the death of her husband. Her right to dower was paramount to the right of the mortgagee ; and the facts showing it appeared on the face of the petition.

Her right was not alleged to be inferior or subordinate to that of the plaintiff. She was not bound to redeem from the mortgage to protect her right. If she had joined in the mortgage, or if it had been given for the purchase-money, and she had been made, with proper averments, a party defendant, she would doubtless be barred of her dower by a decree and valid sale thereunder. The decree was rendered by default, and the case falls exactly within that of *Standish* v. *Dow* (21 Iowa), a case to which we gave very. thoughtful consideration.

The decree did, at most, only undertake to cut off her right to *redeem*, and to this extent only, can it affect her right. She does not have to redeem in order to save her dower, and hence her right to dower remains unaffected by the decree, giving to it its most extended effect.

To prevent a misapprehension of the point here ruled, we may add, that if the wife had joined in the mortgage, or her right to dower had been put in issue, or questioned by allegations in the petition, it would doubtless have been incumbent upon her to have appeared and defended, or else be bound by the decree and sale.

II. The District Court held the foreclosure decree void, on the assumed ground that owing to the defective service

3. JURISDIC-  or return of service on the minors, the court
TION: defec-
tive return.   had no jurisdiction, and hence its decree was a nullity. The District Court relied, to sustain this view, upon the case of *Allen* v. *Saylor* (14 Iowa, 436), which held, that, unless there was complete. service upon the

minors, the court had no jurisdiction to appoint a guardian *ad litem*, or to make any order prejudicial to their rights.

But that was a question arising *on appeal*. In the present case the question arises not upon appeal, but in another cause.

As the minors and their mother were personally served, although the return would have been pronounced defective on appeal, yet the decree was not void; and hence, the heirs at law are not entitled to redeem upon this ground alone.

Upon looking into the evidence, we see no supporting equities which give them the right to be allowed to set aside the foreclosure decree and to redeem the property from the mortgage, provided the sheriff's sale was valid. It will be observed that the objection to the return of service is purely technical. The minor children had no guardian except the mother, who was their natural guardian; they lived with her, and she had the care and control of them. Both she and they were personally served, and, in fact, all was done which the statute then in force required. Code, 1851, § 1721, and ch. 133. But the return omits to say that Maria, who was served as well as the children, was the *mother;* and this omission is the only defect claimed to exist.

The evidence, *aliunde*, shows that the administrator knew of the suit; counseled with an attorney and made no defense in court, probably for the reason that no defense existed. In the present proceeding, the validity of the mortgage debt is admitted. So that in point of law, we hold that the foreclosure decree was not void, but simply voidable on appeal. *Austin* v. *Charlestown Female Seminary*, 8 Metc. (Mass.), 196. And in point of equity, the present bill to redeem, based upon the alleged defective service, is without support in the facts of the transaction.

VOL. XXII.—49

III. The execution was in due form, and was duly levied. The sale, upon a second advertisement, was made after the return day of the writ. It is true that the first sale was postponed, and that the sheriff returns that it was indefinitely postponed by the agreement of " the plaintiff's attorneys and the defendant." The evidence, *aliunde*, shows that the postponement was made at the request of Hunter and of the widow, and for their benefit ; that in point of fact there was a definite time understood in which the balance was to be paid, and that the plaintiff in the execution did not order the sheriff to proceed until this time had considerably overrun.

*4. JUDICIAL SALE: after death of execution.*

It is not claimed that the sale was made clandestinely or fraudulently. The return shows that the sheriff duly advertised a second time. Although the fact of the sale was known, no attempt was made to question its regularity or validity until the present suit was brought, nearly five years after, and not until the purchaser at the sheriff's sale had sold the land for value to another. So that there was no equitable reason for setting aside the sale, and it must stand, unless it is void, because made after the adjournment, and after the writ had expired.

The principle decisive of this question has been several times determined by this court. It is, that, where there has been, under a valid execution, a levy in its life-time, the officer has the power to sell after the return day. The authorities to this effect are too well settled to be disturbed by a denial of the soundness of the foundation upon which they rest. Many of the cases support sales where the lapse of time was much greater than in the present instance. On this subject see *Stein* v. *Chambless*, 18 Iowa, 474 ; *Childs* v. *McChesney*, 20 Id., 431 ; *Butterfield* v. *Walsh*, 21 Id. ; *Phillips* v. *Dana*, 3 Scam. (Ill.), 551 ; *Wheaton* v. *Sexton*, 4 Wheat, 503 ; *La Farge* v.

*Van Wagener*, 14 How. Pr., 54; *Bicknell* v. *Byrnes*, 23 Id., 486; *Wood* v. *Colvin*, 5 Hill, 228. In this last case the sale by the sheriff was made on a writ over two years old, and was sustained. BRONSON, J., remarks: "The objection that a new execution should have issued is not well founded. When the execution of a writ of *fi. fa.* has been commenced before the return day has passed, it may be completed by a sale of the property afterward; and the second sale was well made without issuing a new writ." * * "The original levy remained unaffected." 5 Hill, 228–231.

The decree of the District Court is reversed, and the bill dismissed, the decree dismissing it, to state that it is found and determined herein that the foreclosure decree, and sale thereunder, do not bar the right of the said Maria to dower.

Reversed.