# THE STATE OF IOWA:

## DES MOINES, DECEMBER TERM, A. D. 1874.

IN THE THIRTIETH YEAR OF THE STATE.

---

PRESENT:

HON. WILLIAM E. MILLER, CHIEF JUSTICE.
"   CHESTER C. COLE,    ⎫
"   JAMES G. DAY.       ⎬ JUDGES.
"   JOSEPH M. BECK,    ⎭

---

## OLESON v. BULLARD.

1. **Homestead:** FORECLOSURE: HUSBAND AND WIFE. In an action to foreclose a mortgage executed by the husband alone, to which the wife was made a party, and was duly served with notice and made default, the fact that a part of the mortgaged property was a homestead did not appear in the mortgage or on the face of the petition: *Held*, that equity would not interfere to set aside the decree of foreclosure and subject the lien of the mortgage to the right of homestead.

2. **Fraud:** EVIDENCE: FORECLOSURE. The evidence held insufficient to establish fraud as the ground of a failure to appear and defend in an action to foreclose a mortgage.

3. **Judicial Sale:** MISTAKE IN DEED. That a sheriff's deed described a larger parcel of land than the amount sold did not invalidate the sale respecting that which was really sold and should have been set out in the deed.

*Appeal from Winneshiek District Court.*

Friday, September 25.

On the 18th of March, 1872, the plaintiff and T. Oleson, her husband, filed a petition in equity, alleging that in 1857 John Oleson died intestate, the owner of the N. E. $\frac{1}{4}$ of section No. 32, township 97, range 8, the N. E. $\frac{1}{4}$ whereof was his homestead, and leaving surviving him plaintiff, his widow, and four minor children. That subsequently plaintiff married one Tron Oleson, and they continued to reside on the homestead.

That one Evan Tykerson was appointed guardian of the minor children, and that said guardian obtained from the county judge an order to sell the interest of the minors in said real estate, and sold the whole of said N. E. $\frac{1}{4}$ to Tron Oleson, and received from him notes for $600 and a mortgage on said premises to secure the same, signed by plaintiff and said T. Oleson.

That the sale by said guardian of the whole of said land was unauthorized, because it conveyed the homestead and plaintiff's share, and there was no appraisement thereof.

That on the 12th of February, 1869, T. Oleson, being indebted to defendant in the sum of $1,663, executed to him a note for that amount, and to secure the same executed a mortgage, signed by himself alone, on the said N. E. $\frac{1}{4}$ and also on the N. $\frac{1}{2}$ of S. E. $\frac{1}{4}$ of section 32, in said county.

That afterward defendant, with intent to defraud plaintiffs out of their homestead, purchased of said guardian the notes and mortgage aforesaid, and immediately commenced an action against plaintiff and T. Oleson to foreclose both mortgages, and caused notice thereof to be served on plaintiff and her husband.

That plaintiffs, being ignorant of the nature of such proceedings, and not understanding the English language, were led to believe by defendant that such action would not affect their homestead, and agreed to not appear in said action or file notice to redeem, and defendant promised to protect their homestead, or to buy it if they desired.

That plaintiffs, relying upon defendant's statements, did not appear, and defendant obtained a decree ordering the sale of the N. E. ¼ and the S. E. ¼, of section 32, to satisfy the sum of $1,817.19, with ten per cent. interest and costs, said sum being the amount due on the two mortgages, and that the decree was obtained by fraud, and was improperly rendered in that it makes the amount of the note given by T. Oleson to defendant a lien upon the homestead and interest of Anna Oleson, when it was liable only for the mortgage executed to the guardian.

That defendant caused a special execution. to be issued, had all of said land appraised, and that he bought the same at sheriff's sale for $2,836, and claims to be the owner thereof, including the homestead.

Plaintiffs ask that the sale and deed be set aside, that the decree be vacated, and that they be allowed to retain their homestead.

The defendant answered denying generally, and alleging that the decree of foreclosure was with personal service, and is a bar; that the sheriff's sale was attended by plaintiffs, and they selected appraisers, and made no objection to the sale; and that plaintiffs are estopped from denying the validity of the Tykerson mortgage.

After this answer was filed, and before any evidence was taken, Tron Oleson departed this life, and the action was continued in the name of Anna Oleson.

Afterward defendant filed a further answer, alleging that after the purchase of said land by defendant, plaintiff did, by written lease, rent of defendant said N. E. ¼ and a part of said S. E. ¼, and at the expiration of the lease plaintiff refused to surrender possession, and defendant commenced an action against her for the possession, and plaintiff appeared and answered that she was induced to sign the lease by the fraudulent representations of defendant, that the homestead was not included; that a trial was had before a justice of the peace, and a judgment was rendered for defendant for possession, and, by virtue of an order issued on said judgment, plaintiff was ousted.

Afterward, defendant filed an additional and supplemental answer and cross-petition, alleging that at the time of executing the mortgage by T. Oleson to defendant, T. Oleson did not have title to that portion of the N. ½ of S. E. ¼ of section 32, lying south of the railroad track, being about forty-six acres, but that he had conveyed the same to persons who had not been made parties to the foreclosure suit.

That under the special execution issued in the foreclosure case, K. Thompson, sheriff, levied on the N.E. ¼ and that portion of N. ½ of S.E. ¼, lying north of the railroad track, being in the last tract fifty-five acres, and levied on no other, and that such premises and no other were appraised; that under said execution the sheriff sold the premises so levied on and appraised, to-wit: the N.E. ¼, and the said fifty-five acres for the sum of $2,836, and that no other premises were sold.

That the sheriff by mistake returned the appraisement at $4,800 when it should have been $4,280, and that he had levied on the N.E. ¼ of section 32, and by mistake deeded the whole of said premises to defendant, and the defendant believed he was getting only the N.E. ¼, and said fifty-five acres.

That by reason of these mistakes the title of defendant to the whole is placed in jeopardy, and defendant did not discover the mistake until February, 1874.

Defendant asks that Thompson, sheriff, be made a party, and that the return and deed be corrected.

Thompson answered admitting the matters alleged in cross-petition. Plaintiff filed a reply, denying all the allegations in the answers, and in the cross-petition. The court entered a decree correcting the sheriff's return and deed and dismissing plaintiff's petition. Plaintiff appeals.

*Morss & Brown* and *J. T. Clark*, for appellant.

*L. Bullis* and *Willett & Wellington*, for appellee.

DAY, J.—The proof shows that plaintiff was the wife of John Oleson, and afterward of T. Oleson, that she is now a widow, and that she resided on the N.E. ¼ of section 32, for ten or twelve years, as her homestead.

Oleson v. Bullard.

It is claimed that plaintiff's right to this homestead is not cut off by the decree and sale, because: 1. The court, in its decree subjected the N.E. ¼ of section 32, to the lien of both mortgages. and directed the same to be sold for the amount found due upon the Tykerson and defendant's notes.

The Tykerson mortgage was executed by plaintiff and her husband, to secure $600. The mortgage to defendant was executed by T. Oleson alone, to secure $1,693.10. Defendant bought the Tykerson mortgage, and foreclosed both in the same action. Due notice of the action to foreclose was personally served upon Tron Oleson and the plaintiff Anna Oleson.

In the petition for foreclosure, " Hosea Bullard claims of Tron Oleson, the sum of $679.82, and interest at 10 per cent. from February 1st, 1871. on four promissory notes executed to Evan Tykerson, guardian of minor heirs of John Oleson, deceased, and assigned to plaintiff, and $1,693.10 and interest at 10 per cent. from February 12th, 1869, and $169.31, interest at 10 per cent from February 12th, 1870; and $169.31, and interest at 10 per cent. from February, 12th, 1871, on a promissory note executed by Tron Oleson, to plaintiff; and the foreclosure of two mortgages, one executed by Tron and Anna Oleson, on N.E. ¼, 31, 97, 8, to secure first sum aforesaid, and one executed by Tron Oleson, on N. ½, S.E. ¼ and N.E. ¼, 32, 97, 8, to secure payment of last note, and that all the rights, liens, equities of redemption and interest of all the defendants be forever barred and foreclosed."

The Tykerson mortgage was a lien upon the homestead, because executed by both husband and wife.

The Bullard mortgage, executed by the husband alone, created no lien upon the portion of the premises occupied as a homestead. As to that it would be void. But the fact that a portion of the premises described was a homestead not appearing, or not being shown, the mortgage, *prima facie*, was valid, and created a lien subject merely to the wife's inchoate dower right. When the plaintiff was made a party to the foreclosure proceeding, in which a foreclosure was asked as to the Bullard mortgage upon

1. HOMESTEAD: foreclosure; husband and wife.

all the property described in it, it was incumbent upon plaintiff to appear and interpose as a defense any matter showing that the mortgage, as to a part of the premises, was inoperative. The fact that a part of the premises was a homestead did not appear in the mortgage nor upon the face of the petition. Plaintiff made default in the foreclosure suit, and there was nothing to call the attention of the court to the fact that a portion of the property described in the Bullard mortgage was a homestead. The decree of foreclosure was therefore properly entered, and plaintiff is thereby precluded from insisting upon the invalidity of the mortgage as to the homestead. See *Larson v. Reynolds*, 13 Iowa, 579; and *Haynes v. Meek et ux.*, 14 Iowa, 321.

The case of *Moomey v. Maas*, 22 Iowa, 380, cited and relied on by appellant, sustains rather than controverts this view. That was a foreclosure of a mortgage not executed by the wife, and she was made a party to the foreclosure proceeding. It was held that her dower was not affected. But it was based upon the fact that no claim inconsistent with her dower right was made in the petition. The court say: " Her right to dower was paramount to the right of the mortgagee; and the facts showing it appeared on the face of the petition;" and further: " To prevent a misapprehension of the point here ruled, we may add, that if the wife had joined in the mortgage, or her right of dower had been put in issue, or questioned by allegations in the petition, it would doubtless have been incumbent upon her to have appeared and defended, or else be bound by the decree and sale."

To the same effect is *Standish v. Dow et al.*, 21 Iowa, 363. In the case at bar, however, the allegation that T. Oleson executed a mortgage upon the property described, and the claim that the mortgage be foreclosed, is directly hostile to the claim that part of the mortgaged premises was plaintiff's homestead.

II. It is claimed, however, that the failure to appear and defend, was because of the fraud of defendant. We have carefully examined the abstract, in connection with the amended abstract of appellee, and we

2. FRAUD: evidence: foreclosure.

Oleson v. Bullard.

cannot find that the evidence sustains this claim. It does not appear that anything was said or done by defendant, before the foreclosure, to prevent plaintiff defending that action. From the whole evidence taken together, it appears quite satisfactorily that whatever passed between plaintiff and defendant occurred, not only after the foreclosure, but after the sale. It could not possibly have influenced the conduct of plaintiff in regard to the foreclosure. It is urged that the buying of the Tykerson mortgage was a fraud, or is evidence of a fraudulent purpose, but we discover in that nothing inconsistent with the utmost good faith. We are satisfied that no fraud, in connection with the foreclosure, has been shown.

III. It is further claimed in argument that the sale is void because the sheriff's return shows the sale of the whole of the N. ½ of SE. ¼, and his deed conveys the same, when only 54 acres out of the N. ½ of the SE. ¼ was in fact sold. Perhaps a sufficient answer to this claim is that no relief is asked in the petition upon this ground. But, aside from this, it does not occur to us in what manner plaintiff is prejudiced by the fact that defendant has satisfied his judgment by the sale of less land in fact than the return and deed show were sold. If defendant thought he was buying all mentioned in the deed, and in fact bought less, this might be a reason why he should have the satisfaction of judgment set aside, and the land re-sold. But, as he concedes the mistake, and asks that the deed may be corrected, so as to convey less land than it describes, it seems to us plaintiff sustains no prejudice thereby, and cannot complain.

It is further claimed that the report of the appraisers shows that only 40 acres of the N. ½ of SE. ¼ of section 32, were appraised, and that 14 acres of the 54 in that quarter section were sold without appraisement. Whatever the fact may be regarding the appraisement of this 14 acres, it constitutes, under the pleadings, no ground of action, nor of defense to defendant's cross-petition. The record discloses no material error.

AFFIRMED.