[No. 29058. Department Two. July 8, 1943]

E. M. KANDOLL et al., *Appellants*, v. IDA PENTTILA, *Respondents*, J. M. KOSKI et al., *Defendants*.[1]

[1]Reported in 139 P. (2d) 616.

*John J. Langenbach,* for appellants.

*Fred M. Bond,* for respondent.

GRADY, J.—On August 31, 1936, Mathilda Kandoll obtained a judgment against Ida Penttila for the sum of $2,888.60. Thereafter, E. M. Kandoll and Hjalmar Kandoll, sons of Mathilda Kandoll, and the plaintiffs in this action, acquired all her rights in the judgment. On September 22, 1936, the plaintiffs herein entered into the following written contract with the defendants Ida Penttila, the judgment debtor, and J. M. Koski and Helmi Koski, his wife:

"This contract and agreement entered into this 22nd day of September, 1936, between E. M. Kandoll and Hjalmar Kandoll, sole surviving heirs of Mathilda Kandoll, deceased, parties of the first part, and Ida Penttila and J. M. Koski and Helmi Koski, his wife, parties of the second part,

"WITNESSETH:

"Whereas on the 31st day of August, 1936, in the Superior Court of the State of Washington, for Pacific County, Mathilda Kandoll secured judgment of mortgage foreclosure against Ida Penttila, in the sum of $2888.60, said judgment being a lien upon the following described lands situated in Pacific County, Washington, to-wit: [Here follows a description of the property.]

"And whereas on this day the parties of the second part have paid on said judgment the sum of $513.60 and there is now due and owing on said judgment the sum of $2375.00.

"Now, therefore, in consideration of said payment and the mutual covenants hereinafter mentioned, it is mutually agreed between the parties hereto as follows:

"Said second parties agree as follows:

"1. That they will within two years from date hereof pay in full all of the taxes now due on said above lands and that they will pay all current taxes in full, when due and before delinquent.

"2. That they will pay interest on the balance of said judgment at the rate of 5% per annum payable annually.

"3. That they will pay beginning the third year of this contract, the sum of $100.00 upon the principal of said judgment and yearly thereafter the same sum and they will pay on or before the 27th day of August, 1942, the balance of said judgment with interest at the rate of 5% per annum in full.

"4. That they will not allow any timber to be cut from said lands without the written consent of said first parties, and in case of sale of said lands the above judgment shall be paid in full, no sale shall be made without written consent of first parties.

"5. That the judgment aforesaid is a valid and subsisting judgment, and a valid lien upon said lands.

"Said first parties agree as follows:

"1. That they will not levy execution on said above described lands as long as the covenants above outlined are kept by the second parties; it being mutually understood and agreed to by the parties hereto that said judgment is to be paid in full on or before August 27th, 1942, both principal and interest.

"2. That they will reduce the interest rate on said judgment from 6 to 5% per annum.

"3. That this agreement is not a waiver of the lien of said judgment but merely an extension of the right of execution."

In carrying out this contract, the interest was paid to September 22, 1940. No principal or taxes were paid by the defendants. About March 31, 1943, the plaintiffs commenced this action to recover from the defendants the principal sum of $2,375, with interest from September 22, 1940, until paid. Defendant Ida Penttila was served with summons and complaint, but no service was made upon the two other defendants. She made a general appearance by demurrer, two grounds of which are the only ones necessary to be considered. No appearance was made by the two other defendants. The court sustained the demurrer by a general order, so there is before us the questions whether the complaint states a cause of action and

whether the action is barred by the statute of limitations. The plaintiffs declined to plead further, and a judgment of dismissal was entered, from which this appeal is taken.

██ Respondent Pentilla has moved to dismiss the appeal upon the grounds that no notice of appeal was served upon the defendants J. M. Koski and wife and that no cost bond on appeal was given to them and filed.

The transcript shows that a cost bond on appeal, in proper form, was timely filed, naming all the defendants as obligees, so the second ground of the motion to dismiss the appeal must be denied. It was not necessary to serve notice of appeal upon any defendant other than Ida Penttila, as she was the only one who was served with process or appeared in the action. Rem. Rev. Stat., § 1720 [P. C. § 7294], provides in part:

"When the notice of appeal is not given at the time when the judgment or order appealed from is rendered or made, it shall be served in the manner required by law for the service of papers in civil actions and proceedings, upon all parties who have appeared in the action or proceeding: . . ."

The motion to dismiss the appeal upon the first ground is also denied.

On the merits of the case, the question to be decided is whether the contract before the court is an attempt to prolong the statutory life of the judgment beyond six years from its entry, and thus enable the appellants, as successors in interest of the judgment creditor, to realize on the judgment after the six-year period has expired, or creates a new debt separate from, and independent of, the judgment, and which is secured by the judgment lien on real estate so long as such lien lives.

██ To answer these questions we must ascertain from the contract the intention of the parties and, when that is done, give it effect. When we place ourselves

as near as we can in the position the parties to the judgment were when this contract was entered into and consider the objects to be attained, we are of the opinion that the contract was intended to, and did, create a new indebtedness, owing to appellants by respondent Penttila and the Koskies, and that the judgment, as a debt, was at an end, but that the lien thereof on the real estate of respondent was preserved for the balance of its statutory life as security for the new debt. We think this conclusion must follow when it appears that, by the terms of the contract, the debt could not have been collected by sale on execution so long as the terms of the contract were complied with. If this were done, then, when the balance of the debt became due and collectible by forced sale, August 27, 1942, it would have been too late.

The foreclosure judgment was entered August 31, 1936. Its statutory life would have expired August 31, 1942. An execution could not have been levied and a sale had between August 27, 1942, and August 31, 1942, inclusive; so, if this contract did not create a new debt, then the parties placed themselves in the anomalous position of enabling the debtors to make small annual payments of principal, pay the annual interest, and pay the taxes until August 27, 1942, then cease compliance with the contract, and the creditors would have no recourse as both the debt evidenced by the judgment and the judgment lien would have ceased to exist after August 31, 1942, by virtue of Rem. Rev. Stat., § 459 [P. C. § 8110-17].

■ The rule in this state is that, in order to realize on a judgment by forced sale, not only must an execution issue and be levied within six years from its entry, but the execution sale must also take place within that time. *Long v. Smith,* 125 Wash. 183, 215 Pac. 342, and cases therein cited.

■ We do not think it can be said that the parties to this contract intended to create any such situation.

In *Jacobs v. Teachout*, 126 Wash. 569, 219 Pac. 38, we said, p. 573:

"It is also a rule for the construction of contracts that, where the language used is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not enter into, the interpretation which makes it a rational and probable agreement must be preferred."

The facts in this case make this rule especially applicable. The contract is supported by a valid consideration. Respondent Penttila agreed to pay the debt provided for in return for the promise, on the part of appellants, to extend the time of payment of such debt and refrain from issuing any execution and levying upon or selling the real estate upon which they had a lien, as well as the agreement to accept a lower rate of interest. The contract is one made by competent parties, and its object is legal. The intention of the parties to create a new debt is clear from its terms, also the situation the parties were in when it was entered into, and the object they desired to attain. The contract being a written one for the payment of money, the action was timely brought.

The judgment is reversed, and the case remanded for the entry of an order overruling the demurrer to the complaint.

SIMPSON, C. J., BEALS, and ROBINSON, JJ., concur.

BLAKE, J. (dissenting)—I think the contract under consideration contravenes Rem. Rev. Stat., § 460 [P. C. § 8110-17], which provides:

"No suit, action or other proceeding shall ever be had on any judgment rendered in this state by which the lien or duration of such judgment, *claim or demand*, shall be extended or continued in force for any greater or longer period than six years from the date of the entry of the original judgment, . . ." (Italics mine.)

Obviously, if the contract is given force, the judgment and *claim or demand* upon which it is based is extended for a total period of twelve years. Construing this statute in *Roche v. McDonald,* 136 Wash. 322, 239 Pac. 1015, 44 A. L. R. 444, this court said, p. 326:

"This statute, we think, is not a mere statute of limitation affecting a remedy only. It is more than that. It not only makes a judgment cease to be a 'charge against the person or estate of the judgment debtor' after six years from the rendering of the judgment, but also in terms expressly takes away all right of renewal of or action upon the judgment looking to the continuation of its duration *or that of the demand on which it rests, for a longer period than six years from the date of its rendition.* It does not tell us when an action upon a judgment may be commenced. It simply tells us that no judgment can be rendered extending the period of duration of a judgment, or of the claim or demand upon which it rests, beyond the period of six years following its rendition." (Italics mine.)

Parenthetically, it may be said that this case was reversed by the United States supreme court on a ground, however, that does not in any way affect the force of the portion of the opinion quoted.

In *Ball v. Bussell,* 119 Wash. 206, 205 Pac. 423, we said, p. 208:

"It seems plain to us, not only that there cannot be any revival of the judgment of March 31, 1915, as such, but also that there cannot be any revival or continuation of the life of the cause of action it evidences, beyond 'six years from the date of the entry' of that judgment. This we think is rendered plain by the use of the words 'claim or demand' in addition to the word 'judgment' in § 2 of the law of 1897; meaning, we think, not only the judgment as such, *but also the 'claim or demand' upon which it is rested.*" (Italics mine.)

Essentially the only consideration running to the judgment debtor in the instant case was the same

claim or demand upon which the judgment itself rested.

I dissent.

August 24, 1943. Petition for rehearing denied.