[No. 15532-0-II.    Division Two.    April 21, 1994.]

TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, INC., *Respondent,* v. BRIAN NISSELL, ET AL, *Appellants.*

*William E. Morgan* and *Bitar, Morgan & Bitar,* for appellants.

*Michael A. Valdez* and *Valdez & Sage,* for respondent.

SEINFELD, J. — Brian and Anna Nissell appeal a summary judgment in favor of Ticor Title Insurance Company of California, Inc. (Ticor). The judgment granted foreclosure of a dissolution lien on the Nissell property. We affirm.

In 1980, the Pacific County Superior Court dissolved the marriage of Inge and Ted Puckett. It awarded the family home on Duryea Street to Inge and "a specific lien in the amount of $8,000 against" the property to Ted. The dissolution decree provided that Inge was to pay Ted the $8,000 by August 14, 1986, or "the property will be sold and [Ted Puckett] shall be [paid] the $8,000.00 from the sales proceeds".

On December 17, 1981, Inge filed for chapter 7 bankruptcy, seeking debt liquidation. In her petition she listed Ted Puckett as a secured creditor with a claim of $8,000 secured by the Duryea Street property. On May 4, 1982, the Bankruptcy Court ordered her released from "all dischargeable debts" and held certain judgments null and void. Inge apparently believed the discharge in bankruptcy released or nullified Ted's lien against the property.

Later that year, Inge married John Swartz. In 1985, the Swartzes obtained a remodeling loan from Raymond Federal Savings and Loan Association. The loan was secured by a deed of trust on the Duryea Street residence. The deed of trust named Pioneer Title Company, the local representative of Ticor Title, as trustee.

On January 2, 1985, Ticor issued a preliminary commitment for title insurance to the City of Raymond's Community Development Program. The title commitment listed Ted Puckett's lien as an exception. However, handwritten notes on the document indicate Ticor's conclusion that this lien had been discharged in bankruptcy. On December 12, 1986, Ticor issued a second preliminary commitment to Raymond Federal Savings and Loan. This time, Ticor did not list Puckett's lien.

The Swartzes stopped making payments on the loan in 1987. On April 28, 1988, the trustee issued a notice of trustee's sale. Sometime after the notice, attorney Andrew Monson replaced Pioneer as trustee. On August 5, 1988, Monson, as trustee, sold the property to Anna and Brian Nissell for $10,100. Anna Nissell is Inge Swartz's daughter, and Inge lent the Nissells the money to purchase the property.

Meanwhile, on February 12, 1988, Ted Puckett filed a complaint seeking foreclosure of his lien,[1] extinguishment of inferior interests, and consumer protection damages against Pioneer Title, Ticor's agent. He named as defendants, among others, the Swartzes and Raymond Federal Savings and Loan. On August 2, 1988, Ticor purchased from Ted Puckett for $8,000 an assignment of the lien and a quitclaim deed of Puckett's interest in the Duryea Street property.

On October 16, 1990, Ticor filed this action against the Nissells for foreclosure of the lien. Both parties moved for summary judgment. The trial court granted summary judgment to Ticor, awarding it $8,000 plus interest and costs, for a total of $12,386.54. To satisfy the judgment the trial court

---

[1]The complaint alleges that after Inge Swartz's debt to him became due on August 14, 1986, Ted Puckett unsuccessfully demanded payment from her.

ordered the property sold in the manner prescribed for the foreclosure of mortgages.

On appeal, the Nissells claim that the summary judgment order was contrary to the evidence and the law. In particular, they argue that Ticor's action was an execution on a dissolution decree, and as such was time barred by RCW 4.56.210(1). They also contend that the trial court should have applied the doctrine of equitable estoppel to bar Ticor's foreclosure action.

## I

■ An appellate court reviewing an order of summary judgment performs the same inquiry as the trial court. *Simpson Tacoma Kraft Co. v. Department of Ecology,* 119 Wn.2d 640, 646, 835 P.2d 1030 (1992). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Here, the facts appear undisputed; the issue is one of law. On appeal of a summary judgment, the appellate court decides issues of law de novo. *Draper Mach. Works, Inc. v. Department of Natural Resources,* 117 Wn.2d 306, 311, 815 P.2d 770 (1991).

The Nissells do not argue that Swartz's bankruptcy extinguished Puckett's lien. *See Farrey v. Sanderfoot,* 500 U.S. 291, 114 L. Ed. 2d 337, 111 S. Ct. 1825 (1991). Nor do they argue that the deed of trust foreclosure sale at which they took title extinguished Puckett's lien. Rather, they contend that Ticor's action to foreclose the lien was merely an execution on Ted Puckett's dissolution judgment. Thus, they argue, the proper relief for Ticor was a writ of execution under RCW 6.17, which requires execution on the judgment within the 10 years allowed by RCW 4.56.210(1).

The time limit set forth in RCW 4.56.210(1) for obtaining a writ of execution of a judgment lien issued pursuant to RCW 6.17 differs from the ordinary statute of limitations. *Long v. Smith,* 125 Wash. 183, 184, 215 P. 342 (1923). All steps in the execution process, including the execution sale, must be completed before the expiration of the statutory period. *Ferry Cy. Title & Escrow Co. v. Fogle's Garage Inc.,*

4 Wn. App. 874, 877-80, 484 P.2d 458, *review denied*, 79 Wn.2d 1007 (1971); *see Long*, 125 Wash. at 184. At the end of that period, the lien ceases to exist and, thus, it is no longer possible to execute against it. *Ferry*. According to the Nissells' argument, the 10-year period commenced on the date of the dissolution decree, October 22, 1980, and expired prior to the foreclosure of the lien.

However, the lien in this case was not enforceable as of the 1980 date of the dissolution decree. The decree did not require Inge Puckett to pay Ted Puckett $8,000 until 1986. We have previously described liens that equalize the division of property and are awarded against a specific piece of property as a form of equitable lien. *Northern Comm'l Co. v. E.J. Hermann Co.*, 22 Wn. App. 963, 967-68, 593 P.2d 1332 (1979); *see In re Marriage of Wintermute*, 70 Wn. App. 741, 744-45, 855 P.2d 1186 (1993), *review denied*, 123 Wn.2d 1009 (1994). When an equitable lien secures a debt, the creditor must take court action to subject the security to payment of the debt. *Monegan v. Pacific Nat'l Bank*, 16 Wn. App. 280, 287, 556 P.2d 226 (1976).

Ticor suggests that the applicable statute of limitations for such an equitable lien is set forth in RCW 4.16.020 or that, in the alternative, the statutory time period was tolled during the 6 years that the lien was unenforceable. We find merit in Ticor's alternative theory. It is in accord with our reasoning in *Wintermute*, 70 Wn. App. at 748. *Wintermute* provided that the statutory period for enforcing an equitable lien is tolled during such time as the creditor is judicially restrained through no fault of his own from enforcing it. The *Wintermute* court quoted from the following portion of 3 Richard R. Powell, *Real Property* ¶ 482[1] (1991):

> Generally, any period during which the judgment creditor is restrained from seeking enforcement of the judgment lien will be added to the duration limit of the lien. Events that have this tolling effect on a judgment include judicially imposed stays on execution . . ..

70 Wn. App. at 746. In *Wintermute*, as here, a dissolution decree both created a lien and then precluded its enforce-

ment for a specified time after entry of the judgment. The *Wintermute* court concluded that the creditor was thereby "judicially restrained" from enforcing the lien. 70 Wn. App. at 747-48. The identical situation faces us here. Puckett was judicially restrained from enforcing the lien until August 14, 1986, by the terms of the dissolution decree. The statutory period was tolled until that date. Thus, less than 5 years of the time period set forth in RCW 4.56.210 had elapsed before Ticor filed its action on October 16, 1990. Ticor's action was timely.

■ Nor was Ticor limited to a writ of execution to enforce a general money judgment brought under the original dissolution cause of action. RCW 6.17.020, .060, .110. The trial court specifically imposed the lien on a particular piece of property. The decree provided that Ted Puckett, the judgment creditor, could sell the property to satisfy the debt. It was appropriate for Ticor, not a party to the original dissolution, to file a separate action to foreclose the lien. This is consistent with execution on equitable liens. *See Monegan*, 16 Wn. App. at 287.

## II

■■ We also are not persuaded by the Nissells' argument that the trial court erred by not applying the doctrine of equitable estoppel to bar Ticor's claim. Equitable estoppel requires:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted, (2) action by the other party on the faith of such admission, statement, or act, and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Saunders v. Lloyd's of London*, 113 Wn.2d 330, 340, 779 P.2d 249 (1989).[2] If both parties can determine the underlying law and know the facts, the doctrine does not apply. *Saunders*, at 341. Silence may satisfy criterion (1), but only if there is an affirmative duty to speak. *Saunders*, 113 Wn.2d at 340.

---

[2](Quoting *McDaniels v. Carlson*, 108 Wn.2d 299, 308, 738 P.2d 254 (1987) (quoting *Harbor Air Serv., Inc. v. Board of Tax Appeals*, 88 Wn.2d 359, 366-67, 560 P.2d 1145 (1977))).

■ Here, Ticor's failure to mention the Puckett lien on its second preliminary title commitment may have been inconsistent with its later foreclosure of that lien. However, Ticor prepared that title report for Raymond Federal Savings and Loan. It did so pursuant to a contract by which Ticor agreed to indemnify the Savings and Loan for title encumbrances not identified. The contract did not purport to provide similar relief to the Nissells. Further, Ticor did not affirmatively state that the lien was extinguished. It simply failed to list the lien as an exception. As to the Nissells, Ticor had no duty to speak out. The Nissells cannot establish estoppel based on Ticor's silence.

■ In addition, both parties knew the underlying facts regarding Ted Puckett's lien, and each could determine the law. If the Nissells relied on the Ticor title report, such reliance was not reasonable. *See Concerned Land Owners v. King Cy.*, 64 Wn. App. 768, 778, 827 P.2d 1017, *review denied*, 119 Wn.2d 1008 (1992).

> In addition to satisfying the elements of equitable estoppel, the party asserting the doctrine must show that the reliance was reasonable. *Marashi v. Lannen*, 55 Wn. App. 820, 824, 780 P.2d 1341 (1989). "Reliance is justified only when the party claiming estoppel did not know the true facts and had no means to discover them." *Marashi*, 55 Wn. App. at 824-25. The doctrine of equitable estoppel also is inapplicable where the representations relied upon are questions of law rather than questions of fact.

*Concerned Land Owners*, at 778.

■ Finally, the Nissells have not shown that they have the "clean hands" required to obtain equitable relief. *See Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 650-51, 757 P.2d 499 (1988). Inge Swartz, the defaulting party and mother of Anna Nissell, provided the funds for the purchase of the property at the trustee's sale. While she owned the property, it was subject to Ticor's lien. It would be inequitable if the law allowed her to finance her daughter's purchase of the property free of the lien after she had defaulted on her debt to Ticor. "A person may not base a claim of estoppel on conduct, omissions, or representations

induced by his own conduct, concealment, or representations, especially when fraudulent." *Mutual of Enumclaw*, 110 Wn.2d at 651 (quoting 31 C.J.S. *Estoppel* § 75, at 453-54 (1964)). While there is no suggestion that the Nissells engaged in fraudulent conduct, they have failed to show that they are fully innocent parties. "[E]stoppel is available to innocent parties only." *Mutual of Enumclaw*, 110 Wn.2d at 651. The trial court did not err in failing to apply the doctrine of equitable estoppel under the facts here.

Affirmed.

MORGAN, C.J., and ALEXANDER, J., concur.