954 P.2d 1301 (1998)
135 Wash.2d 45
Lois HAZEL, Petitioner,
v.
Leonard VAN BEEK and Marjorie Van Beek, husband and wife, d/b/a J-LEN CONSTRUCTION, Respondents.
No. 65472-7.
Supreme Court of Washington, En Banc.
Argued March 10, 1998.
Decided April 23, 1998.
*1302 Ludwigson, Thompson, Hayes & Bell, John S. Ludwigson, Bellingham, for Petitioner.
David Vis, Patrick Gallery, Brett & Daugert, Philip J. Buri, Bellingham, for Respondents.
DOLLIVER, Justice.
Lois Hazel foreclosed on real property of Leonard Van Beek to satisfy a judgment Hazel had won against Van Beek. Because Hazel failed to complete all steps of execution prior to the expiration of the statutory life of the judgment, we hold Hazel's judgment expired and is unenforceable.
Lois Hazel hired Leonard Van Beek to remodel her home. Following a dispute over Van Beek's work and purported overcharges, Hazel obtained a judgment for $59,081 against Van Beek in the United States Bankruptcy Court for the Western District of Washington, at Seattle, No. 82-03969. The judgment was entered on November 2, 1983. Hazel filed a copy of the judgment in Whatcom County on November 30, 1983.
On January 31, 1984, Van Beek filed a new petition for chapter 13 bankruptcy. This bankruptcy was dismissed just over six months later, on August 7, 1984. Bankruptcy filings stay enforcement of judgment liens during the pendency of the bankruptcy proceeding, 11 U.S.C. § 362(a)(2), (4), (5), so Hazel was precluded from enforcing her judgment during those six months in 1984. No legal barrier prevented Hazel from enforcing her judgment after August 7, 1984.
Not until August 1993 did Hazel obtain an amended writ of execution against real estate owned by Van Beek. The judgment amount, including interest, and offset by payments made by Van Beek, totaled $102,917.72. On October 15, 1993, the sheriff sold the real estate to Hazel, the highest bidder, for $109,447.66. The sheriff filed the return of the sale with the Superior Court, and notice of the return was mailed on October 25, 1993.
On November 17, 1993, 23 days after notice was mailed, Van Beek filed objections to the sale. He claimed the judgment and judgment lien expired on November 2, 1993, 10 years from the date of entry of the judgment. Because the judgment and lien expired, Van Beek claimed the court could not confirm the sale, and the property should be returned free and clear to Van Beek. Hazel first argued Van Beek's objections were filed past the 20-day deadline for objecting and could not be considered by the court. Hazel then argued she was not required to have the sale confirmed within the 10-year life of the judgment, and she argued in the alternative that the 10-year period was tolled for six months in 1984 when she was precluded from enforcing the judgment because of Van Beek's bankruptcy proceedings.
The confirmation motion was heard by a superior court judge on November 19, 1993. The trial court did not enter its written order confirming the sale until October 28, 1994. The reason for this long delay between the hearing and entry of the order, according to Hazel, is that Van Beek filed another bankruptcy petition soon after the November 19, 1993, hearing.
*1303 Van Beek appealed the trial court's confirmation of the sale, and the Court of Appeals reversed. Hazel v. Van Beek, 85 Wash.App. 129, 931 P.2d 189 (1997). The Court of Appeals held Van Beek's objections to the sale, though filed more than 20 days after notice of the sale was sent, could still be considered by the trial court. The Court of Appeals held confirmation was an essential step of enforcing a judgment and confirmation must occur within the life-span of the judgment. The court denied Hazel's claim that the 1984 bankruptcy tolled the 10-year life-span of the judgment. Hazel petitioned this court for review. Hazel v. Van Beek, 133 Wash.2d 1009, 946 P.2d 402 (1997).
First Issue: Can Van Beek's objections to the confirmation of the sale be considered, or are they time barred?
After a judgment creditor has obtained a writ of execution and the sheriff has sold the debtor's real property to satisfy the judgment debt, the court must confirm the sale upon motion of the purchaser. RCW 6.21.110(2), the applicable statute, states in part:
The judgment creditor or successful purchaser at the sheriff's sale is entitled to an order confirming the sale at any time after twenty days have elapsed from the mailing of the notice of the filing of the sheriff's return, on motion with notice given to all parties ..., unless the judgment debtor... shall file objections to confirmation with the clerk within twenty days after the mailing of the notice of the filing of such return.
Van Beek's objections to the sale were filed 23 days after notice of the sale was mailed. Our first issue is whether Van Beek waived his right to object by filing his objections in an untimely fashion. The Court of Appeals analyzed the use of the word "shall" in subsection two, and decided the word was not used in a mandatory sense. The court held the 20-day deadline for filing objections in RCW 6.21.110(2) was discretionary, Hazel, 85 Wash.App. at 134-36, 931 P.2d 189, thereby allowing the court to consider Van Beek's objections.
We cannot sustain the Court of Appeals' analysis of RCW 6.21.110(2). Shall has more than one definition. Most cases discussing the use of shall within a statute focus on whether the word conveys a mandatory duty or a permissive requirement. See, e.g., Erection Co. v. Department of Labor & Indus., 121 Wash.2d 513, 518-19, 852 P.2d 288 (1993). However, an entirely different use of the word exists. Shall can be used to express simple futurity. See Webster's Third New International Dictionary 2085-86 (1986) ("when [shall] we three meet again" ... "I [shall] just put these papers together ... and send them off by the morning mail"). RCW 6.21.110(2) uses shall in the futuristic sense, not in the mandatory or discretionary sense. Unless the debtor shall object within 20 days of mailing of notice, the creditor is entitled to confirmation. Since "shall" merely expresses a simple futurity, the rest of the language within the statute must be analyzed to determine whether the 20-day deadline for filing objections is mandatory.
Other language within RCW 6.21.110(2) establishes the 20-day time period is mandatory. A purchaser of property at an execution sale "is entitled to an order confirming the sale at any time after twenty days have elapsed from the mailing ... unless the judgment debtor ... shall file objections to confirmation with the clerk within twenty days after the mailing...." RCW 6.21.110(2) (emphasis added). The operative word is "entitled." The purchaser is entitled to the order of confirmation at any time after 20 days have passed, unless the debtor files an objection within the time limit. When paraphrased in this way, the statute demonstrates the mandatory aspect of the deadline without even using the word "shall."
Our construing RCW 6.21.110(2) as mandatory is consistent with Krutz v. Batts, 18 Wash. 460, 51 P. 1054 (1898). Krutz analyzed a precursor of RCW 6.21.110, and the substantive portions of the former law are comparable to the current statute:
"1. The plaintiff shall be entitled, on motion therefor, to have an order confirming the sale at the term next following the return of the execution, or if it be returned in term time, then at such term, unless the judgment debtor ... shall file with the clerk ten days before such term, or if the writ be returned in term time, then five *1304 days after the return thereof, his objections thereto."
Krutz, 18 Wash. at 463, 51 P. 1054 (quoting section 508 of the Code of Procedure). The facts in Krutz are as follows. A judgment creditor obtained a writ of execution on the debtor's property, and the creditor purchased the property at the sheriff's sale on April 18, 1896. On April 20, 1896, the return of the sale was placed on the court docket, and the debtor did not file objections in a timely fashion. Not until May 15, 1897, did the debtor file objections to the sale. On May 17, 1897, the creditor motioned for confirmation of the sale, but the trial court considered the objections and ruled the sale and underlying judgment null and void.
The Supreme Court reversed the trial court and held the sale should have been confirmed. Because the objections were filed late, the trial court could not consider the objections. The Supreme Court reasoned "it is evidently not the intention of the law to allow an indefinite time to elapse before an objection to a confirmation is made." Krutz, 18 Wash. at 463, 51 P. 1054. Krutz is still good law, and its reading of the old law is equally informative of RCW 6.21.110(2). The current version of the statute, similar to its 100-year-old precursor, imposes a time limit for objecting to procedures of the sale. No language appears in the current statute rendering the deadline any less mandatory than it was in the statute construed in Krutz. We reverse the Court of Appeals' reading of RCW 6.21.110(2), and we hold the deadline for procedural objections is mandatory.
Our inquiry does not stop here, however, because it has long been recognized that a confirmation sale can be attacked when jurisdictional, as opposed to procedural, objections are raised. See Betz v. Tower Sav. Bank, 185 Wash. 314, 324, 55 P.2d 338 (1936) ("[A]n order confirming a sale concludes inquiry into any irregularity attending it, save as to jurisdictional matters.") (emphasis added) (citations omitted); McLiesh v. Ball, 58 Wash. 690, 109 P. 209 (1910). Cf. Miebach v. Colasurdo, 102 Wash.2d 170, 685 P.2d 1074 (1984) (allowing judgment debtor to attack collaterally a confirmed sale on equitable grounds, long after the sale had been confirmed).
In McLiesh, the court allowed debtors to attack a sale after it had been confirmed. The debtors had satisfied the judgment by paying the judgment creditor's agent before the sheriff's sale occurred. Since the judgment had been paid, it ceased to exist and became void. Even though the debtor did not object in a timely fashion under the statute, the sale could be attacked after confirmation on grounds the judgment was void. "A sale on a void judgment is not one of the irregularities contemplated by the statute." McLiesh, 58 Wash. at 692, 109 P. 209.
McLiesh follows the common law principle which states a void judgment can be attacked at any time. See CR 60(b)(5); In re Marriage of Leslie, 112 Wash.2d 612, 620, 772 P.2d 1013 (1989). This principle has been applied in the context of confirmation of an execution sale. See Mueller v. Miller, 82 Wash.App. 236, 251, 917 P.2d 604 (1996) ("A trial court has no discretion when faced with a void judgment, and must vacate the judgment `whenever the lack of jurisdiction comes to light.'") (emphasis added) (quoting Mitchell v. Kitsap County, 59 Wash.App. 177, 180-81, 797 P.2d 516 (1990)). When a debtor objects to confirmation of the sale on the ground that the underlying judgment is void, the 20-day deadline for objections cannot be raised as a bar to a trial court's considering the objection.
Had Van Beek's objections to the sale been based on procedural irregularities of the sale, they would have been untimely under the mandatory 20-day deadline in RCW 6.21.110(2). Van Beek's objections do not concern procedural aspects of the sale. He claims the judgment expired in the midst of the execution proceedings, rendering the judgment and judgment lien void, thereby removing the court's jurisdiction to confirm the sale. Since Van Beek claims the judgment expired, becoming void, his objections are not barred by the 20-day deadline.
Second Issue: Did Hazel's judgment expire, rendering the judgment and judgment lien invalid and precluding the trial court from confirming the sale?
Hazel raises two different arguments why her purchase of the property should be confirmed. *1305 Both arguments center around the appropriate reading of the statute concerning the life-span of a judgment. RCW 4.56.210(1) states:
Except as provided in subsections (2) and (3) of this section, after the expiration of ten years from the date of entry of any judgment heretofore or hereafter rendered in this state, it shall cease to be a lien or charge against the estate or person of the judgment debtor. No suit, action or other proceeding shall ever be had on any judgment rendered in this state by which the lien shall be extended or continued in force for any greater or longer period than ten years.
Subsections (2) and (3) are inapplicable to this case.
Hazel's first argument regarding this statute confuses the difference between entry of the judgment and commencement of the judgment lien on the property of the judgment debtor. Under RCW 4.56.200(2), a judgment lien upon the real estate of the judgment debtor commences as follows:
Judgments of the district court of the United States rendered in any county in this state other than that in which the real estate of the judgment debtor to be affected is situated, ... from the time of the filing of a duly certified abstract of such judgment with the county clerk of the county in which the real estate of the judgment debtor to be affected is situated, as provided in this act[.]
Under this subsection, the lien commences at a later point in time than when the judgment was entered. In that situation, the judgment expires 10 years from its date of entry, and the lien expires when the judgment expires, even if the lien had not been in effect for 10 full years. Hazel argues the 10 years should not start to run until the lien commences, but this argument is entirely without merit. The 10-year period commences upon entry of judgment, regardless of when the lien is filed. See RCW 4.56.190 ("[E]very such judgment shall be a lien thereupon to commence as provided in RCW 4.56.200 and to run for a period of not to exceed ten years from the day on which such judgment was entered ....") (emphasis added); RCW 4.56.210(1) ("after the expiration of ten years from the date of the entry of any judgment....") (emphasis added).
Hazel's second argument involves what steps must be completed to successfully execute a judgment before the judgment's life-span expires. Hazel obtained the writ of execution, and then purchased the property at a sheriff's sale on October 15, 1993. She claims confirmation did not have to occur within the judgment's life-span. Van Beek claims Hazel's judgment expired on November 2, 1993, thereby preventing the court from confirming the sale because such confirmation would be a court action on a lien beyond the 10 years after entry of the judgment, which is prohibited by RCW 4.56.210(1).
Van Beek's argument relies on a line of Court of Appeals cases, which cases hold "there can be no valid execution on the judgment unless every act necessary for a completed execution sale (including judicial confirmation of the sale) occurs" within the statutory life of the judgment. Weyerhaeuser Pulp Employees Fed. Credit Union v. Damewood, 11 Wash.App. 12, 15, 521 P.2d 953 (1974) (Weyerhaeuser Pulp Employees) (citing Ferry County Title & Escrow Co. v. Fogle's Garage, Inc., 4 Wash.App. 874, 877-80, 484 P.2d 458 (1971) (Fogle's Garage)); see also Mueller v. Miller, 82 Wash.App. 236, 247-48, 917 P.2d 604 (1996).
Fogle's Garage conducted an extensive analysis in support of its holding that all steps, including confirmation, must be completed prior to expiration of the statutory time period. First, the court discussed and extensively quoted from Long v. Smith, 125 Wash. 183, 215 P. 342 (1923), Kandoll v. Penttila, 18 Wash.2d 434, 139 P.2d 616 (1943), and Hardin v. Day, 29 Wash. 664, 70 P. 118 (1902). In Hardin, the writ of execution was issued, but the sheriff's sale had not yet occurred, when the statutory life of the underlying judgment expired. The court refused to confirm the sale of the property, holding the sheriff's sale must occur prior to expiration of the judgment. Hardin, 29 Wash. at 665, 70 P. 118. Long applied the same principle to garnishment proceedings which had been initiated, but not completed, prior to expiration of the judgment. The *1306 semi-completed garnishment proceedings were dismissed because the judgment expired. Long, 125 Wash. at 184, 215 P. 342.
Fogle's Garage involved a new twist on the issuethe sheriff's sale was scheduled to occur two days before expiration of the statutory life of the judgment, but it was clear the confirmation of the pending sale could not occur within the judgment's life-span. The court applied the old line of cases to this new scenario, finding confirmation of the sale was as important of a step as the sale itself:
Confirmation is an essential procedural step in completion of an execution sale. Betz v. Tower Sav. Bank, 185 Wash. 314, 322, 55 P.2d 338 (1936). Confirmation of the sale is a condition precedent to the issuance of a sheriff's deed. RCW 6.24.220. Legal title does not pass to a purchaser until the sheriff's deed has been executed. Cogswell v. Brown, 102 Wash. 625, 173 P. 623 (1918). Therefore, a sale is not completed until it is confirmed. Thereafter, the issuance of a sheriff's deed upon expiration of the redemption period becomes a ministerial act not requiring the assistance of a court. RCW 6.24.220.
Fogle's Garage, 4 Wash.App. at 880, 484 P.2d 458. Fogle's Garage correctly evaluated the importance of confirmation. A trial court's confirmation of a sheriff's sale is not simply ministerial; the court's confirmation is a necessary step to finalize the sale contract with the purchaser. See In re Marriage of Davies, 48 Wash.App. 29, 32, 737 P.2d 721 (1987) (purchaser at sheriff's sale can withdraw bid prior to confirmation of sale, the bid does not become a contract until confirmed by the court) (quoting In re Liquidation of Spokane Sav. Bank, 198 Wash. 665, 672, 89 P.2d 802 (1939)). Fogle's Garage held the judgment creditor lost the right to enforce the judgment by failing to complete all steps of execution, including confirmation of the sale, within the judgment's life-span. The same result was reached in Grub v. Fogle's Garage, Inc., 5 Wash.App. 840, 491 P.2d 258 (1971), and in Weyerhaeuser Pulp Employees.
We note that one legal treatise suggests a rule contrary to Fogle's Garage. Powell on Real Property states "[t]he filing of a legal action based on the judgment lien, such as an action for foreclosure of the lien, also has the effect of prolonging the duration of the lien." 5 Richard R. Powell, Powell on Real Property § 38.08[1], at 38-47 (Patrick J. Rohan rev. ed., 1997) (footnote omitted). It is unclear how many jurisdictions follow this rule, since the treatise only cites one Texas Court of Appeals decision in support of the statement. The treatise then goes on to state, without citing any authority, that a creditor retains a secured position in the property even if the judgment lien expires before the foreclosure action is concluded. Id.
Hazel urges this court to reverse the Fogle's Garage line of cases. Hazel's objection to Fogle's Garage rests primarily upon her reading of RCW 6.17.020(1), which states:
Except as provided in subsections (2), (3), and (4) of this section, the party in whose favor a judgment of a court of record of this state or a district court of this state has been or may be rendered, or the assignee, may have an execution issued for the collection or enforcement of the judgment at any time within ten years from entry of the judgment.
Hazel argues this statute, by allowing issuance of the execution at any time within 10 years, implies further steps to enforce the judgment do not have to occur within the 10-year life-span of the judgment. Read in a vacuum, RCW 6.17.020(1) does seem to imply that further steps to execute the judgment may not have to occur within the judgment's life-span. If an execution on a judgment may issue at any time within the judgment's life-span, one could argue the writ of execution should be allowed to issue on the final day of that life-span, and further steps such as the sale and confirmation should be allowed to proceed beyond the judgment's life-span. Similarly, one could argue the Legislature, by not mentioning further steps after issuance of the execution in RCW 6.17.020(1), has impliedly sanctioned those further steps occurring beyond the 10-year window.
Hazel's reading of RCW 6.17.020(1), while reasonable, is not convincing. First, while the statute may contain the inference urged by Hazel, the statute does not require such a reading. The statute says nothing as to when the further steps of execution must *1307 occur. The statute's allowing execution to issue at any time within 10 years does not preclude the Legislature from requiring further steps of execution also to occur within the life-span of the judgment. Additionally, Hazel's attempted reading of RCW 6.17.020(1) consistently has been disapproved by Washington courts for nearly a century. RCW 6.17.020(1) can be traced back to the Code of Washington Territory:
The party in whose favor judgment is given, may at any time, within five years thereafter, have a writ of execution issued for its enforcement, as prescribed in this chapter; if the period of five years shall have elapsed, an execution shall not issue thereafter....
Code of 1881 § 325 (the life-span of a judgment was just five years in 1881see Code of 1881 § 321). Section 325 and its successors, leading up to and including the current RCW 6.17.020(1), all provide a writ of execution can be issued at any time within the life-span of the judgment. In other words, the current statute and its predecessors all contain the same inference: If the execution can issue any time within the judgment life-span, subsequent steps of execution may not have to occur within the life-span. Despite this inference, the Supreme Court has repeatedly held the sheriff's sale must also occur within the judgment life-span. Hardin v. Day, 29 Wash. 664, 70 P. 118 (1902) (citing Brier v. Traders' Nat'l Bank, 24 Wash. 695, 64 P. 831 (1901) and Packwood v. Briggs, 25 Wash. 530, 65 P. 846 (1901)); see also Long v. Smith, 125 Wash. 183, 184, 215 P. 342 (1923) (citing numerous cases for the same proposition). Fogle's Garage is a natural extension of the logic in Hardin, where it holds confirmation also must occur within the judgment life-span. Hardin and Fogle's Garage refute Hazel's reading of RCW 6.17.020(1).
The Legislature is presumed to be aware of judicial construction of statutes. Friends of Snoqualmie Valley v. King County Boundary Rev. Bd., 118 Wash.2d 488, 496, 825 P.2d 300 (1992). Despite the long-standing holding of Hardin, and its extension in Fogle's Garage over 25 years ago, the Legislaturewhich has amended RCW 4.56 and Title 6 RCW numerous times since 1971 has never altered the language of the relevant statutes so as to expressly override the holdings of those cases. We must follow Hardin and Fogle's Garage when interpreting the same statutory language. See Friends of Snoqualmie Valley, 118 Wash.2d at 497, 825 P.2d 300. Confirmation is a necessary step of execution which must occur within the statutory duration of a judgment.
Third Issue: Should the life-span of Hazel's judgment be tolled, or extended for six months, to account for the six-month stay of enforcement during Van Beek's 1984 bankruptcy action?
Hazel argues the 10-year life-span of her judgment should have been tolled for the months between January and August 1984, when she was precluded from enforcing the judgment because of Van Beek's attempted bankruptcy filing. She relies upon two cases in her argument, In re Marriage of Wintermute, 70 Wash.App. 741, 855 P.2d 1186 (1993), and Ticor Title Ins. Co. of Cal., Inc. v. Nissell, 73 Wash.App. 818, 871 P.2d 652 (1994).
The Court of Appeals fully addressed and disputed Hazel's arguments. Hazel, 85 Wash.App. at 138-42, 931 P.2d 189. Ticor and Wintermute both involved equitable liens which arose out of divorce settlements. In Wintermute, the divorce settlement entitled the husband to a payment of $12,000 from the wife, due eight years after entry of the settlement. The wife was awarded the family house. The husband was given a lien on the house to secure the $12,000 payment. Wintermute, 70 Wash.App. at 742, 855 P.2d 1186. In Ticor, the wife again retained the house, and the husband received a lien for $8,000 against the house, payable approximately six years after entry of the divorce decree. Ticor, 73 Wash.App. at 819, 871 P.2d 652. Both cases held the life of the equitable liens given to the husbands did not begin to run until the liens could be enforced. The liens' life-spans were tolled between their creation and their dates of enforceability.
Hazel relies on numerous quotes from Wintermute in support of her arguing the 1984 bankruptcy should toll the life of her judgment. The statements from Wintermute supporting Hazel's argument are dicta, *1308 or are otherwise not controlling in this case. Wintermute analyzed and cited as authority Holmes v. Fanyo, 326 Ill.App. 624, 63 N.E.2d 249 (1945), but Holmes relied entirely upon an Illinois statute which expressly tolled the life of a judgment lien for any period during which the creditor was restrained by a court from enforcing the judgment. See Wintermute, 70 Wash.App. at 747 & n. 8, 855 P.2d 1186. Washington has no counterpart to the Illinois statute relied on in Holmes.
Wintermute erroneously cites 11 U.S.C. § 362(a)(2), (4), (5) for the proposition that a federal bankruptcy petition stays a period prescribed by state statute for enforcing a judgment lien. Wintermute, 70 Wash.App. at 746, 855 P.2d 1186. The statute merely states the bankruptcy petition stays enforcement of the lien and says nothing about the effect of that injunction on the statutory life of the lien under state law. Another federal statute, 11 U.S.C. § 108 does discuss the effect of federal bankruptcy stays on limitation periods under state law, but neither Wintermute nor Hazel relied on section 108. We conduct an independent analysis of section 108 below.
Wintermute and Ticor involved equitable liens. Equitable liens are distinct from statutory judgment liens. Northern Commercial Co. v. E.J. Hermann Co., 22 Wash.App. 963, 968, 593 P.2d 1332 (1979). Hazel's judgment lien against Van Beek was a statutory judgment lien, governed by the statutes. The nature of a statutory judgment lien has been fully analyzed by the Supreme Court through the years:
A statute creating a lien right for a definite length of time only, is something that is in addition to the cause of action or substantive right in question and is not a statute of limitations, because it does not exist outside of the period during which it is conferred.
The lien here in question may not be invoked outside of the period during which it is conferred by the statute. This is not because of a statute of limitations that would be overcome by Rem.Rev.Stat., § 167, but because, outside of the terms of the statute creating the lien, no lien exists. Hutton v. State, 25 Wash.2d 402, 407, 171 P.2d 248 (1946). Given the statutory nature of the lien, the courts have been extremely cautious of interfering with the statutory right.
The legislature can, of course, fix the duration of a judgment lien at such a length of time as suits its pleasure; it can prescribe the time of its commencement and its ending, and make these hinge on the happening of particular events. And when it has done this in language clear and unmistakable, as it has in the statute before us, there is no room for construction, and the courts can do nothing else than give the statute effect.
Whitworth v. McKee, 32 Wash. 83, 89, 72 P. 1046 (1903). See also Grub v. Fogle's Garage, Inc., 5 Wash.App. 840, 843, 491 P.2d 258 (1971) ("A judgment lien is born by statute, RCW 4.56.190, and dies by statute, RCW 4.56.210.").
If the judgment life-span was a normal statute of limitation, which it is not, Hazel could attempt to argue equitable tolling. Cf. State v. Duvall, 86 Wash.App. 871, 874, 940 P.2d 671 (1997) (if a time limit is jurisdictional, instead of normal statute of limitation, waiver, estoppel, and doctrine of equitable tolling cannot be argued). The doctrine of equitable tolling, however, cannot afford relief to a plaintiff if the plaintiff has not exercised due diligence in pursuing one's rights. Douchette v. Bethel Sch. Dist. 403, 117 Wash.2d 805, 811, 818 P.2d 1362 (1991). Hazel waited nine years after the alleged tolling event before seeking to enforce her judgment.
Only one case has been located wherein this court has granted equitable relief and extended the life-span of a statutory judgment lien. In Hensen v. Peter, 95 Wash. 628, 164 P. 512 (1917), Louis Hensen obtained a judgment against W.H. Peter on July 30, 1908. At that time the life of a judgment was six years. Hensen obtained a writ of execution and had the debtor's property scheduled to be sold on January 10, 1914, far within the six-year window. Peter then filed an action in superior court and obtained a temporary injunction against the sale. Upon trial of the action brought by Peter, the injunction was dissolved and the action was dismissed. The dismissal was affirmed *1309 on appeal, and became final on January 4, 1916. Hensen then had the property sold on March 11, 1916. Peter objected to confirmation of the sale, claiming the six-year life of the judgment lien expired prior to the sale. Hensen noted:
The effect of an injunction, which is subsequently dissolved, on the lien upon real estate of a judgment which expires by limitation during the time the injunction is kept in force, is an important question of first impression in this jurisdiction and one upon which the courts are not in entire accord.
Hensen, 95 Wash. at 630, 164 P. 512. The court then analyzed numerous cases from other jurisdictions where a debtor obtained an injunction, later dissolved, against the sale of property, and the creditor's judgment expired during the pendency of the injunction. All of those cases discussed by Hensen held the creditors could still enforce the judgment because the debtors' injunctions prevented the creditors from meeting the deadline. After surveying the cases, Hensen held:
We are convinced that the rule announced in the decisions and texts to which we have referred is sustained by the overwhelming weight of authority, both numerically and upon principle, and is founded in natural and moral justice.
This view is not open to the criticism of being judicial legislation in that it amounts to reading exceptions into a statute that the legislature has not seen fit to make.... It merely declares that one shall not, by waging unfounded litigation, be rewarded at the expense of his unwilling opponent. It is based upon the equitable principle that a party will not be permitted to avail himself of an unconscientious advantage obtained by his own wrongful act and without fault on the part of his adversary. It is sustained by the wholesome consideration that a party should not be permitted to profit by the abuse or misuse of legal process or by imposing upon judicial tribunals litigation without merit.
Hensen, 95 Wash. at 637, 164 P. 512. Hensen is still controlling, but the holding fails to apply to the facts of this case. Van Beek may have pursued meritless litigation to hinder Hazel's enforcement of the judgment when he filed for bankruptcy in 1984, but the bankruptcy court dismissed the action months later. While the bankruptcy action prevented Hazel from enforcing her judgment during that brief time period, it did not, as in Hensen, prevent Hazel from enforcing the judgment within the statutory lifetime. Hazel suffered no injury, nor were her rights prejudiced, since she had nine more years after 1984 to enforce her judgment. See also Weyerhaeuser Pulp Employees, 11 Wash. App. at 16-17, 521 P.2d 953.
In Weyerhaeuser Pulp Employees, the debtor obtained a temporary restraining order against the sheriff's sale. The trial court determined the debtor's legal arguments were partially valid, and the court held the creditor could only execute against the property after the creditor complied with the requirements of former RCW 6.12 (now codified at RCW 6.13) (homestead claims). The creditor failed to comply with the requirements, and a year later the court permanently enjoined the creditor from enforcing the judgment, since its six-year life-span had expired. The creditor argued the life-span should have been tolled by the debtor's legal action. Weyerhaeuser Pulp Employees held the creditor still had five months, after notice of the trial court's consideration of the debtor's arguments, and before expiration of the judgment lien, during which the creditor could have completed the execution against the debtor's property. Weyerhaeuser denied the creditor's tolling argument and ruled for the debtor.
Absent a defendant's blatant abuse of the court system, thereby injuring the rights of the plaintiff, no equitable relief can be provided. The facts of this case are more similar to Weyerhaeuser Pulp Employees. Just as the debtor's legal action in Weyerhaeuser Pulp Employees did not prevent the creditor from meeting the deadline for enforcing the judgment, neither did Van Beek's 1984 bankruptcy stop Hazel from enforcing her judgment before November 2, 1993.
It would be improper for us to write new exceptions into RCW 4.56.210. If the Legislature intended for tolling, it could have provided for it; and, in fact, in 1994 the Legislature amended RCW 6.17.020(3), RCW *1310 4.16.020, and RCW 4.56.190 to provide for a 10-year extension of the life of a judgment upon request of the creditor. Laws of 1994, ch. 189, §§ 1-3. The Legislature explicitly made the new exception prospective only. RCW 6.17.020(3). With the Legislature having specifically addressed the manner by which a creditor can extend the life of a judgment, we will not interfere with the issue.
Hazel's counsel did not discuss the possible effect of 11 U.S.C. § 108 on this case. The statute was brought up at oral argument, with Van Beek's counsel arguing the statute does not support Hazel's tolling position. Section 108(c) provides:
[I]f applicable nonbankruptcy law ... fixes a period for commencing or continuing a civil action ... on a claim against the debtor, ... and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of
(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
(2) 30 days after notice of the termination or expiration of the stay ... with respect to such claim.
11 U.S.C. § 108(c)(1), (2).
The majority of jurisdictions have interpreted section 108(c)(1) as not tolling a state statute of limitation in the normal fashion. See Rogers v. Corrosion Prods., Inc., 42 F.3d 292, 296 (5th Cir.1995); Thurman v. Tafoya, 895 P.2d 1050, 1055 (Colo.1995); Don Huddleston Constr. Co. v. United Bank & Trust Co., 933 P.2d 944, 947 (Okla.Civ.App.1996) (Huddleston). Thurman`s analysis is noteworthy:
By its terms, section 108(c) does not toll any applicable statute of limitations period. Instead, the statute of limitations period continues to run. If the limitations period expires while the bankruptcy stay is in effect, then section 108(c) provides creditors with an extra thirty days to pursue a claim once the creditor receives notice that the bankruptcy stay has been lifted. See 11 U.S.C. § 108(c)(2). The phrase "suspension of such period" in section 108(c)(1) does not operate to stay the running of statute of limitations periods. Instead, this section incorporates suspension provisions that are expressly prescribed by other federal or state statutes.
Thurman, 895 P.2d at 1055 (footnote omitted); accord Huddleston, 933 P.2d at 947; Rogers, 42 F.3d at 297.
A minority of jurisdictions have construed section 108(c) as effectively tolling a state's statute of limitation or statute of duration for an equal amount of time as a bankruptcy proceeding stays the creditor from enforcing a judgment. See, e.g., Major Lumber Co. v. G & B Remodeling, Inc., 817 S.W.2d 474 (Mo.Ct.App.1991), and cases cited therein. Two different federal circuit courts, using broad language, have declared section 108(c) "tolls" a statute of limitation during a bankruptcy. See In re Morton, 866 F.2d 561, 566 (2d Cir.1989); In re Hunters Run Ltd. Partnership, 875 F.2d 1425, 1429 (9th Cir.1989) (Hunters Run).
We are not convinced by Major Lumber Co. and find more convincing the majority position expressed in Thurman and Rogers. Additionally, the broad language in Hunters Run and In re Morton has subsequently been criticized in those federal circuits. In re Morton's broad language was subsequently limited in Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1073-74 (2d Cir.1993). Aslanidis expressly agreed with Thurman: Section 108(c)(1) does not itself provide for tolling of a statute of limitation it "merely incorporates suspensions of deadlines that are expressly provided in other federal or state statutes." Aslanidis, 7 F.3d at 1073. Otherwise, section 108 merely "tolls" a statute of limitation by allowing the creditor 30 days to act after the bankruptcy stay is lifted in those cases where the limitation period expires during the bankruptcy stay. Id. at 1073-74.
The Ninth Circuit has stepped back from its broad language in Hunters Run as well. In In re Southern Cal. Plastics, Inc., 208 B.R. 178 (B.A.P. 9th Cir.1997), a lienholder was required under state law to obtain a judgment on the lien within three years, but the debtor filed for bankruptcy, and the three-year period expired while the bankruptcy stay was in effect. The federal bankruptcy court ruled, "Under section 108(c)(2), [the lienholder] still has a thirty-day period *1311 after notice that the automatic stay has terminated or expired within which to renew his lien or obtain a judgment." Southern Cal. Plastics, 208 B.R. at 181. The court did not "toll" the state statute of limitation for an equal amount of time as the bankruptcy stay prevented the creditor from enforcing the lien.
The life-span of Hazel's judgment lien did not expire during the 1984 bankruptcy, so section 108(c)(2) does not apply. Since no applicable state law tolled the life of Hazel's judgment lien, section 108(c)(1) cannot be used to extend the life of her lien. Section 108(c) does not support Hazel's claim that the 1984 bankruptcy should toll the statutory life of her judgment.
In conclusion, we reverse the Court of Appeals' analysis of RCW 6.21.110(2), but we uphold the Court of Appeals in all other respects. Van Beek's objections were appropriately considered, and Hazel's judgment became unenforceable by her failing to have the sale confirmed within the statutory duration of her judgment. In that Van Beek's 1984 bankruptcy petition did nothing to preclude Hazel from enforcing her judgment between August 1984 and November 2, 1993, we find no facts in this case which would permit us to equitably extend the life of her judgment. While we sympathize with her plight, this does not excuse her unjustifiable delay in executing the judgment against Van Beek.
DURHAM, C.J., and SMITH, GUY, JOHNSON, MADSEN, ALEXANDER, TALMADGE and SANDERS, JJ., concur.